EMILY S. COSTIN (SBN 240414)
emily.costin@alston.com
COURTNEY E. WALTER (*pro hac vice*)
courtney.walter@alston.com
**ALSTON & BIRD LLP**
950 F Street, N.W.
Washington, D.C. 20004
Telephone: (202) 239-3300
Facsimile:  (202) 654-4995

DAVID CARPENTER (*pro hac vice*)
david.carpenter@alston.com
ANDREW BROWN (*pro hac vice*)
andrew.brown@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile:  (404) 881-7001

JEAN E. RICHMANN (SBN 323525)
jean.richmann@alston.com
**ALSTON & BIRD LLP**
560 Mission St., 21st Floor
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile:  (415) 243-1001

*Attorneys for Defendant*
*Aetna Health of California, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SALOOJAS, INC.,<br><br>     *Plaintiff,*<br><br>v.<br><br>AETNA HEALTH OF CALIFORNIA, INC.,<br><br>     *Defendant*. | Case No.:  3:22-cv-02887-JSC<br>Hon. Jacqueline Scott Corley<br><br>**DEFENDANT AETNA HEALTH OF CALIFORNIA, INC.'S NOTICE OF MOTION, MOTION TO DISMISS COMPLAINT, AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Judge:** Hon. Jacqueline Scott Corley<br>**Date:** September 29, 2022<br>**Time:** 9:00 a.m.<br>**Ctrm:** 8<br><br>**Complaint Filed:**  May 16, 2022 |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 29, 2022, or as soon thereafter as this matter may be heard in the courtroom of the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California, located in Courtroom 8, Nineteenth Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Aetna Life Insurance Company ("ALIC") (erroneously named as Aetna Health of California, Inc.) (herein, "Aetna")[1] will and hereby does move the Court, pursuant to Fed. R. Civ. P. 8, 9(b), and 12(b)(6), for an order dismissing each claim for relief asserted in Plaintiff Saloojas Inc.'s ("Plaintiff") Original Class Action Complaint and Jury Demand ("Complaint").

Aetna brings this Motion to Dismiss on the grounds that:

1.  The First Cause of Action fails because there is no private right of action under the Families First Coronavirus Response Act ("FFCRA") or the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. Even if there was such a private right of action, Plaintiff has failed to plausibly allege that it is entitled to reimbursement of its "cash price" under the applicable law as required by Fed. R. Civ. P. 8 and 12(b)(6);

2.  The Second Cause of Action fails to state a claim under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), because: (a) Plaintiff lacks standing to bring this claim; (b) Plaintiff failed to exhaust the administrative remedies available under the patients' ERISA-governed plans; and (c) Plaintiff failed to state a plausible ERISA § 502(a)(1)(B) claim pursuant to Fed. R. Civ. P. 8 and 12(b)(6);

3.  The Third Cause of Action fails to state a plausible claim under any prong of the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to Fed. R. Civ. P. 9(b);

---

[1] Plaintiff has erroneously named Aetna Health of California, Inc. ("AHCI") as the Defendant in this action. However, the proper corporate entity that issues the policies and plans at issue is Aetna Life Insurance Company ("ALIC"). This is evident from the Explanation of Benefits ("EOB") cited in Plaintiff's own Complaint. Compl. at pp. 21-23. ALIC is the proper entity to this action, not AHCI.

4. Plaintiff's state law claims in the Fourth, Fifth, and Sixth Causes of Action are preempted by ERISA, to the extent Plaintiff seeks to assert such state law claims regarding services provided to Aetna members who participate in ERISA-governed plans;

5. Plaintiff's state law claims in the Fourth, Fifth, and Sixth Causes of Action fail because Plaintiff has not plausibly alleged that any of the Aetna members participate in non-ERISA plans governed by California law;

6. The Fourth Cause of Action fails to state a plausible promissory estoppel claim under Fed. R. Civ. P. 8 and 12(b)(6) because Plaintiff does not allege a "promise" from Aetna on which Plaintiff relied to its detriment (let alone a promise that is clear and unambiguous);

7. The Fifth Cause of Action for injunctive relief fails because injunctive relief is merely a remedy, and not an independent cause of action; and

8. The Sixth Cause of Action under the California Unfair Competition Law fails to state a plausible claim pursuant to Fed. R. Civ. P. 8 and 12(b)(6) because each of Plaintiff's theories of liability fails to allege any conduct sufficient to state a claim.

Further, Aetna moves to strike Plaintiff's "class action" claims pursuant to Fed. R. Civ. P. 12(f) because they relate exclusively to its FFCRA and CARES Act claims, and there is no private right of action for these statutes.

Aetna bases this Motion on this Notice of Motion, Motion, the attached Memorandum of Points and Authorities, Declaration of Courtney E. Walter, and all other pleadings and papers filed in this action, oral argument of counsel, and any other matters that may come before the Court.


DATED:  July 15, 2022                          _/s/ Jean E. Richmann_____
                                               Jean E. Richmann

                                               **ALSTON & BIRD LLP**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ...................................................................................3

III.  PLAINTIFF'S ALLEGATIONS ...........................................................6

IV.   LEGAL STANDARD..............................................................................7

V.    ARGUMENT .........................................................................................8

    A.    PLAINTIFF'S FFCRA/CARES ACT CLAIM (COUNT I) FAILS. ...........................8

        1.    There Is No Private Right Of Action Under The FFCRA Or The CARES Act.....................................................................................8

        2.    Plaintiff Fails To State Any Plausible Claim For Reimbursement Of Its Posted "Cash Price." .......................................................9

            *a.*    *Plaintiff does not allege it is a CLIA-certified provider.* ...................10

            *b.*    *Plaintiff did not disclose its "cash price."* ...........................11

    B.    PLAINTIFF'S ERISA CLAIM (COUNT II) FAILS. ...............................................12

        1.    Plaintiff Lacks Standing To Bring A Claim Under ERISA § 502(a)(1)(B). ...............................................................................12

        2.    Plaintiff Failed To Exhaust Administrative Remedies. ..................................14

        3.    Plaintiff Fails To State An ERISA Claim For Benefits. ..............................16

            *a.*    *Plaintiff fails to adequately plead a claim for benefits.* .....................16

            *b.*    *Plaintiff's request for "equitable reformation" should be disregarded.* ...........................................................................18

    C.    PLAINTIFF'S RICO CLAIM (COUNT III) FAILS.................................................18

        1.    Plaintiff Has Not Pled Any Predicate Acts.....................................................19

        2.    Plaintiff Fails To Plead An Enterprise. ...........................................................21

    D.    ERISA PREEMPTS PLAINTIFF'S STATE LAW CLAIMS (COUNTS IV-VI) FOR ALL MEMBER CLAIMS ARISING UNDER EMPLOYEE BENEFIT PLANS...................................................................................23

    E.    PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED. ...........................24

i

1.     Plaintiff Does Not Plausibly Allege That Any Member Claims Are Subject To California Law..................................................................24

2.     Plaintiff's Claim For Promissory Estoppel Fails. ............................................25

3.     Plaintiff's Claim For Injunctive Relief Must Be Dismissed. ..........................26

4.     Plaintiff's Claim Under the California Unfair Competition Law Must Be Dismissed. ...................................................................................27

        a.     *Plaintiff's claim under the "unlawful" prong fails*............................27

        b.     *Plaintiff's claim under the "unfair" prong fails*.................................28

        c.     *Plaintiff's claim under the "fraud" prong fails*.................................29

F.     PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRICKEN. ......................29

VI.     CONCLUSION....................................................................................................31

NOTICE OF MOTION, MOTION TO DISMISS, AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS
Case No.:  3:22-cv-02887-JSC

1

## TABLE OF AUTHORITIES

2

**Page(s)**

Cases

3

*ABC Servs. Grp., Inc. v. United Healthcare Servs.*,
4
    No. 19-cv-0531, 2019 U.S. Dist. LEXIS 168445 (C.D. Cal. June 14, 2019) .........................27

5

*Adan v. Kaiser Found. Health Plan, Inc.*,
    No. 17-cv-01076-HSG, 2018 U.S. Dist. LEXIS 36683 (N.D. Cal. Mar. 6, 2018) .................15

6

*Adv. Choices, Inc. v. State Dep't of Health Servs*,
7
    182 Cal. App. 4th 1661 (2010) ..........................................................................................25

8

*Aetna Health Inc. v. Davila*,
9
    542 U.S. 200 (2004)...........................................................................................................23

10

*Akhlaghi v. Cigna Corp.*,
    No. 19-cv-03754-JST, 2019 U.S. Dist. LEXIS 240174 (N.D. Cal. Oct. 23, 2019)................17

11

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
12
    99 F. Supp. 3d 1110 (C.D. Cal. 2015) ..................................................................................17

13

*Amato v. Bernard*,
14
    618 F.2d 559 (9th Cir. 1980) ................................................................................................14

15

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)...........................................................................................................23

16

*Ashcroft v. Iqbal*,
17
    556 U.S. 662 (2009)............................................................................................... passim

18

*Aton Ctr., Inc. v. Blue Cross & Blue Shield of N.C.*,
    No. 3:20-cv-00492-WQH-BGS, 2020 U.S. Dist. LEXIS 138600 (S.D. Cal. Aug. 3, 2020)...26
19

*Avanguard Surgery Ctr. v. Cigna Healthcare of California, Inc.*,
20
    No. 2:20-cv-03405, 2020 U.S. Dist. LEXIS 156826 (C.D. Cal. Aug. 28, 2020) ...................25

21

*Barnes v. AT&T Pension Benefit Plan*,
22
    No. C-08-4058 EMC, 2012 U.S. Dist. LEXIS 65819 (N.D. Cal. May 10, 2012) .................16

23

*Bell Atl. Corp. v. Twombly*,
24
    550 U.S. 544 (2007)............................................................................................... passim

25

*BioHealth Med. Lab., Inc. v. Conn. Gen. Life. Ins. Co.*,
    No. 1:15-cv-23075-KMM, 2016 U.S. Dist. LEXIS 11466 (S.D. Fla. Feb. 1, 2016)..............24

26

*Birdsong v. Apple, Inc.*,
27
    590 F.3d 955 (9th Cir. 2009) ..............................................................................................27

28

iii

*Blau v. Del Monte Corp.*,
   748 F.2d 1348 (9th Cir. 1984) ...........................................................................16

*Brand Tarzana Surgical Inst., Inc. v. Blue Cross & Blue Shield*,
   833 F. App'x 714 (9th Cir. 2021) .......................................................................17

*Bristol SL Holdings, Inc. v. United Healthcare Servs.*,
   No. SACV 19-0710-DOC, 2019 U.S. Dist. LEXIS 208361 (C.D. Cal. Oct. 7, 2019) ......13, 17

*Cal. Spine & Neurosurgery Inst. v. JP Morgan Chase & Co.*,
   No. 19-cv-03552-PJH, 2019 U.S. Dist. LEXIS 220044 (N.D. Cal. Dec. 23, 2019)...............23

*Carlin v. DairyAmerica, Inc.*,
   978 F. Supp. 2d 1103 (E.D. Cal. 2013)..............................................................29

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ........................................................................................28

*Chuck v. Hewlett Packard Co.*,
   455 F.3d 1026 (9th Cir. 2006) ............................................................................16

*Cimoli v. Alacer Corp.*,
   No. 20-cv-07838, 2022 U.S. Dist. LEXIS 33593 (N.D. Cal. Feb. 25, 2022) ...................29, 30

*Cleghorn v. Blue Shield*,
   408 F.3d 1222 (9th Cir. 2005) ............................................................................24

*Cort v. Ash*,
   422 U.S. 66 (1975)................................................................................................9

*Creative Care Inc. v. Conn. Gen. Life Ins. Co.*,
   No. CV 16-9056-DMG, 2017 U.S. Dist. LEXIS 216871 (C.D. Cal. July 5, 2017)................13

*Cty. of Monterey v. Blue Cross of Cal.*,
   No. 17-CV-04260-LHK, 2019 U.S. Dist. LEXIS 13392 (N.D. Cal. Jan. 28, 2019) ..............13

*DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*,
   852 F.3d 868 (9th Cir. 2017) ..............................................................................13

*Diaz v. United Agr. Emp. Welfare Benefit Plan & Trust*,
   50 F.3d 1478 (9th Cir. 1995) ........................................................................14, 15

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ...............................................................................8

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) .................................................................8, 19, 20

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*,
   No. 10-CV-04911-EJD, 2011 U.S. Dist. LEXIS 75433 (N.D. Cal. July 13, 2011) ..........17, 18

iv

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
  463 U.S. 1 (1983) ....................................................................................................12

*Gardner v. Starkist Co.*,
  418 F. Supp. 3d 443 (N.D. Cal. 2019) .....................................................................21

*Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*,
  805 F. App'x 530 (9th Cir. 2020) .............................................................................17

*Granadino v. Wells Fargo Bank, N.A.*,
  236 Cal. App. 4th 411 ...............................................................................................26

*Grenell v. Ups Health & Welfare Package*,
  390 F. Supp. 2d 932 (C.D. Cal. 2005) ......................................................................15

*Halpin v. W.W. Grainger, Inc.*,
  962 F.2d 685 (7th Cir.1992) ......................................................................................16

*In re Out of Network Substance Use Disorder Claims*,
  No. 19-cv-2075, 2020 U.S. Dist. LEXIS 81195 (C.D. Cal. Feb. 21, 2020) ............28

*In re WellPoint, Inc. Out-of-Network Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ...........................................................21, 22, 29

*Ingersoll-Rand Co. v. McClendon*,
  498 U.S. 133 (1990)...................................................................................................23

*IV Sols., Inc. v. Conn. Gen. Life Ins. Co.*,
  No. 13-cv-9026, 2015 U.S. Dist. LEXIS 189753 (C.D. Cal. Jan 29, 2015) ............28

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ..................................................................................27

*Korman v. ILWU-PMA Claims Office*,
  No. 2:18-cv-07516-SVW-JPR, 2019 U.S. Dist. LEXIS 58646 (C.D. Cal. Mar. 19, 2019).....15

*Ladas v. Cal. State Auto Ass'n*,
  19 Cal. App. 4th 761 (1993) ......................................................................................25

*Larson v. Old Dominion Freight Line, Inc.*,
  277 Fed. App'x 318 (4th Cir. 2008) ..........................................................................16

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 114 (2007) ....................................................................................28

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
  431 F.3d 353 (9th Cir. 2005) .....................................................................................19

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) .....................................................................................11

*McKeever v. Block*,
   932 F.2d 795 (9th Cir. 1991) ..................................................................................9

*Milyakov v. JP Morgan Chase Bank*,
   No. C-11-02066, 2011 U.S. Dist. LEXIS 99152 (N.D. Cal. Sept. 2, 2011) ...........................26

*Misic v. Bldg. Servs. Emps. Health & Welfare Tr.*,
   789 F.2d 1374 (9th Cir. 1986) .................................................................................13

*Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*,
   No. 3:20cv1675(JBA), 2022 U.S. Dist. LEXIS 43351 (D. Conn. Mar. 11, 2022)..............9, 14

*Neurological Surgery, P.C. v. Aetna Health Inc.*,
   511 F. Supp. 3d 267 (E.D.N.Y. 2021) ........................................................................15

*Pac. Recovery Sols. v. Cigna Behavioral Health, Inc.*,
   No. 5:20-cv-02251, 2021 U.S. Dist. LEXIS 59779 (N.D. Cal. Mar. 29, 2021) ...............20, 21

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ........................................................................12

*Peterson v. Wash. Mut Bank*,
   No. C-10-01462-JCS, 2010 U.S. Dist. LEXIS 144391 (N.D. Cal. July 29, 2010).................26

*Prime Healthcare Servs v. United Healthcare Servs.*,
   No. 2:16-cv-01773, 2017 U.S. Dist. LEXIS 162863 (E.D. Cal. 2017) ......................27, 28, 29

*Puri v. Khalsa*,
   674 F. App'x 679 (9th Cir. 2017) ...........................................................................8, 19

*R&R Surgical Inst. v. Int'l Longshore & Warehouse Union*,
   No. 21-cv-00640, 2022 U.S. Dist. LEXIS 87776 (C.D. Cal. Mar. 8, 2022)......................20, 21

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).............................................................................................22

*Rj v. Cigna Behavioral Health*,
   No. 5:20-cv-02255-EJD, 2021 U.S. Dist. LEXIS 55023 (N.D. Cal. Mar. 23, 2021) ........17, 22

*Robinson v. Aetna Life. Ins. Co.*,
   443 F.3d 389 (5th Cir. 2006) ...................................................................................16

*Rush Prudential HMO, Inc. v. Moran*,
   536 U.S. 355 (2002).............................................................................................12

*Saloojas, Inc. v. Aetna Health of Cal., Inc.*,
   Nos. 22-cv-01696-JSC, 22-cv-01702-JSC, 22-cv-01703-JSC, 22-cv-01704-JSC, 22-cv-
   01706-JSC, 2022 U.S. Dist. LEXIS 111620 (N.D. Cal. June 23, 2022) ..............................1, 8

NOTICE OF MOTION, MOTION TO DISMISS, AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS
Case No.:  3:22-cv-02887-JSC

*Samaan v. Anthem Blue Cross Life & Health Ins. Co.*,
   No. CV 20-4332-DMG, 2021 U.S. Dist. LEXIS 127328 (C.D. Cal. Mar. 10, 2021)..............18

*Shaw v. Delta Airlines, Inc.*,
   463 U.S. 85 (1983) ...................................................................................................12

*Simi Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.*,
   No. 2:17-cv-02685-SVW-AS, 2018 U.S. Dist. LEXIS 199045 (C.D. Cal. Jan. 4, 2018) .......15

*Snapkeys, Ltd. v. Google, LLC*,
   No. 19-CV-02658, 2020 U.S. Dist. LEXIS 203172 (N.D. Cal. Oct. 30, 2020).......................28

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
   770 F.3d 1282 (9th Cir. 2014) ...................................................................................14

*Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*,
   No. 17-cv-03871, 2017 U.S. Dist. LEXIS 167462 (N.D. Cal. Oct. 10, 2017) .......................27

*Synopsis, Inc v. Ubiquiti Networks, Inc.*,
   313 F. Supp. 3d 1056 (N.D. Cal. 2018) .....................................................................19

*TML Recovery, LLC v. Humana, Inc.*,
   No. 18-cv-00462, 2018 U.S. Dist. LEXIS 228980 (C.D. Cal. Nov. 26, 2018) ......................26

*TomTom Int'l, B.V. v. Broadcom Corp*,
   No. 14-cv-745, 2015 U.S. Dist. LEXIS 47583 (C.D. Cal. Apr. 9, 2015) ...............................29

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) ...................................................................................19

*United Food & Com. Worker Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,
   719 F.3d 849 (7th Cir. 2013) .....................................................................................22

*United States v. Turkette*,
   452 U.S. 576 (1981)..................................................................................................21

*Wade v. Hewlett Packard Dev. Co. LP Short Term Disability Plan*,
   493 F.3d 533 (5th Cir. 2007) .....................................................................................16

*Wible v. Aetna Life Ins. Co.*,
   375 F. Supp. 2d 956 (C.D. Cal. 2005) .......................................................................12

*Zacharias v. JP Morgan Chase Bank, N.A.*,
   No. 12-cv-06525-SC, 2013 U.S. Dist. LEXIS 20258 (N.D. Cal. Feb. 13, 2013)....................19

**FEDERAL STATUTES**

18 U.S.C. § 664...........................................................................................................19

18 U.S.C. § 1341 ...................................................................................................19

18 U.S.C. § 1343 ...................................................................................................19

18 U.S.C. § 1961(1) ..............................................................................................19

18 U.S.C. § 1962(c) ........................................................................................19, 21

29 U.S.C. § 1132 ............................................................................................ passim

29 U.S.C. § 1144 ...................................................................................................23

42 U.S.C. § 247(d) ..................................................................................................3

42 U.S.C. § 263a .....................................................................................................4

CARES Act, Pub. L. 116-136 ........................................................................ passim

ERISA § 502(a)(1)(B) .................................................................................... passim

ERISA § 514(a) ......................................................................................................23

FFCRA Pub. L. 116-127 ................................................................................ passim

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200-17210 ................................................................27

**RULES**

Fed. R. Civ. P. 8 .............................................................................................7, 8, 24

Fed. R. Civ. P. 9(b) ....................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ................................................................................. passim

Fed. R. Civ. P. 12(f) ..............................................................................................29

Fed. R. Civ. P. 23 ..................................................................................................30

**REGULATIONS**

29 C.F.R. § 2560.503-1 ....................................................................................14, 16

45 C.F.R. § 182.20 ........................................................................................4, 5, 11

45 C.F.R. § 182.40 ...................................................................................................4

85 Fed. Reg. 71142 .................................................................................................4

85 Fed. Reg. 71152 ...........................................................................................4, 10

NOTICE OF MOTION, MOTION TO DISMISS, AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS
Case No.:  3:22-cv-02887-JSC

**OTHER AUTHORITIES**

*Advisory on COVID-19 Health Insurance- and Health Care-Related Fraud*, FinCEN
    Advisory (FIN-2021-A001) (Feb. 2, 2021) (available at
    https://www.fincen.gov/sites/default/files/advisory/2021-02-02/COVID-
    19%20Health%20Care%20508%20Final.pdf) ............................................................6

FAQs About [FFCRA] and [CARES] Act Implementation Part 43 (June 23, 2020), Q. 11,
    https://www.cms.gov/files/document/FFCRA-Part-43-FAQs.pdf .........................................11

FAQs About [FFCRA] and [CARES] Act Implementation Part 44 (February 26, 2021), Q. 6,
    available at https://www.cms.gov/files/document/faqs-part-44.pdf ..........................................5

Ken Alltucker, *Labs are charging up to $14,000 for COVID-19 tests.  Insurer claim 'price
    gouging.'*, USA Today (Sept. 20, 2021),
    https://www.usatoday.com/story/news/health/2021/09/20/insurers-must-pay-full-cost-
    coronavirus-tests-under/8367397002/?gnt-cfr=1 ........................................................6

Ltr. from Cal. Dep't of Managed Health Care to All Full-Service Commercial and Medi-Cal
    Managed Care Health Care Service Plans (Apr. 25, 2022), available at
    https://www.dmhc.ca.gov/Portals/0/Docs/OPL/APL%2022-
    014%20%20SB%20510%20COVID-
    19%20Testing%20and%20Vaccination%20Coverage%20Guidance%20(4_25_22).pdf?v
    er=2022-04-25-170513-017 ............................................................................5

Meiselbach, Mark et al., *Charges of COVID-19 diagnostic testing and antibody testing
    across facility types and states*, J. Gen. Intern. Med., 1-4 (Sept. 15, 2020), available at
    https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7491868 ....................................1, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Saloojas, Inc. ("Plaintiff") is an urgent care clinic that provided COVID-19 testing to patients participating in Aetna health benefit plans, and then billed Aetna wildly inflated charges for doing so.  The crux of Plaintiff's Complaint is that it wants Aetna to pay its unconscionably high billed charges for basic COVID-19 testing.  But Plaintiff has no entitlement — legal, equitable, or otherwise — to payment of its exorbitantly high billed charges.  To put it in perspective, the average nationwide price for a COVID-19 test is less than $150.[2]  Yet the documents cited in Plaintiff's own Complaint show that Plaintiff billed *over a thousand dollars ($1000)* per test.  As Plaintiff recognizes in its Complaint, Congress passed COVID-related legislation "to, amongst other things, address issues pertaining to the costs of and access to Covid Testing during the COVID-19 pandemic."  Compl. ¶ 4.  But Plaintiff did just the opposite: it inflated the billed charges for its COVID-19 testing in an attempt to take advantage of newly-passed legislation that was put in place to mitigate the tremendous national health risks posed by COVID-19, not to line the pockets of unscrupulous providers.

Now, Plaintiff filed this "class action lawsuit" on behalf of ***all*** "persons, businesses and entities who were and are out-of-network providers" of COVID-19 testing services seeking the "cash price" of the COVID-19 tests performed by those providers nationwide.  Compl. ¶¶ 24, 36.  But Plaintiff fails to plead any cognizable claim.  Rather, Plaintiff's Complaint asserts a variety of legally impermissible claims that: (i) arise under statutes that do not provide a private cause of action; (ii) are preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and (iii) lack sufficient factual allegations to withstand *Iqbal* and *Twombly* scrutiny.  Plaintiff's claims are without merit, and the Court should dismiss them.

*First*, this Court has already held that Plaintiff has no private right of action under the Families First Coronavirus Response Act ("FFCRA") or the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.  *See Saloojas, Inc. v. Aetna Health of Cal., Inc.*, Nos. 22-cv-01696-JSC, 22-cv-

---

[2]    Meiselbach, Mark et al., *Charges of COVID-19 diagnostic testing and antibody testing across facility types and states*, J. Gen. Intern. Med., 1-4 (Sept. 15, 2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7491868.

01702-JSC, 22-cv-01703-JSC, 22-cv-01704-JSC, 22-cv-01706-JSC, 2022 U.S. Dist. LEXIS 111620, at *13 (N.D. Cal. June 23, 2022) (dismissing Plaintiff's claims under these statutes, finding "[t]he CARES Act does not provide an implied private right of action for Plaintiff to seek reimbursement of its posted cash price").  Count I fails on this basis alone.

*Second*, the Complaint is devoid of sufficient factual allegations that Plaintiff is entitled to receive its posted "cash price" under the FFCRA or the CARES Act.  Plaintiff fails to allege that it is a proper CLIA-certified "provider of a diagnostic test for COVID-19" as defined by the CARES Act such that it should be entitled to receive its posted "cash price."  And Plaintiff does not even identify what its actual posted cash price is (presumably because it is over 10 times higher than the national average), nor where its price was posted.  Neither piece of legislation permits uncertified laboratories (such as Plaintiff) to gouge insurers and self-insured plan sponsors in this manner.

*Third*, Plaintiff fails to state a cognizable claim for benefits under ERISA § 502(a)(1)(B).  As a threshold matter, a medical provider such as Plaintiff does not have statutory standing to bring such a claim under ERISA without an assignment — and Plaintiff's Complaint lacks sufficient allegations to support such standing.  Moreover, Plaintiff's ERISA claim is substantively deficient because it fails to plead facts establishing the exhaustion of administrative remedies (or excusing the failure to do so) and does not identify *any* ERISA plans or ERISA plan provisions that require the payment of benefits sought in this lawsuit.  And Plaintiff's singular reference to "equitable reformation" should be disregarded because such relief is not available under ERISA § 502(a)(1)(B).

*Fourth*, Plaintiff asserts a naked Racketeer Influenced and Corrupt Organizations Act ("RICO") claim.  Plaintiff's RICO claim relies on an unintelligible theory of mail and wire fraud; that is exactly the sort of conclusory pleading that Rule 9(b) exists to root out.

*Fifth*, Plaintiff's state law claims fail.  To the extent Plaintiff seeks to assert such state law claims with respect to Aetna members who participate in ERISA-governed plans, such claims are preempted.  Further, Plaintiff fails to sufficiently allege that any Aetna members at issue participate in individual, non-ERISA plans governed by California law.  Even if it had, Plaintiff has failed to plausibly allege its three state law claims.   Specifically: (1) Plaintiff's claim for promissory estoppel fails because Plaintiff does not and cannot allege a single clear and unambiguous "promise" from

Aetna on which Plaintiff relied to its detriment; (2) Plaintiff's request for injunctive relief is merely a remedy, and not an independent cause of action; and (3) each of Plaintiff's theories of liability under the California Unfair Competition Law fails to allege any conduct sufficient to state a claim.

Finally, Plaintiff's class action allegations should be struck at the pleading stage because all of Plaintiff's "class" allegations relate exclusively to its FFCRA and CARES Act claims.  But there is no private right of action under the FFCRA or the CARES Act.  Therefore, Plaintiff is entirely prohibited from pursuing claims on behalf of a class for violations of these statutes.

For these reasons as further detailed below, the Court should dismiss Plaintiff's Complaint with prejudice.

## II.    BACKGROUND

In the early months of 2020, the United States faced an unprecedented crisis as it began to navigate its response to the outbreak of the COVID-19 pandemic.  On January 31, 2020, the U.S. Health and Human Services ("HHS") Secretary determined that a public health emergency existed pursuant to section 319 of the Public Health Service Act (42 U.S.C. § 247d), and on March 13, 2020, the President declared the COVID-19 pandemic a national emergency.

Within a matter of days following the President's declaration, on March 18, 2020, Congress enacted the FFRCA — wide-sweeping legislation designed to provide various forms of immediate relief to Americans during the COVID-19 pandemic.  As part of this legislation, Congress enacted section 6001(a) of the FFCRA, which states that a "group health plan and a health insurance issuer offering group or individual health insurance coverage" shall provide coverage for in-vitro diagnostic products and services relating to the diagnosis of COVID-19.  *See* FFCRA, Pub. L. 116-127.

A little over a week after the FFCRA was enacted, on March 27, 2020, Congress enacted the CARES Act.  Related to section 6001(a) of the FFCRA, Congress enacted section 3202(a) of the CARES Act, which provides that "[a] group health plan or a health insurance issuer providing coverage of items and services" described in section 6001(a) of the FFCRA shall reimburse the provider of the diagnostic testing in the following manner:

> (1)  If the health plan or issuer has a negotiated rate with such provider in effect before the public health emergency declared under section 319 of the Public Health Service

1    Act (42 U.S.C. § 247d), such negotiated rate shall apply throughout the period of such
2    declaration.

3    (2)  If the health plan or issuer does not have a negotiated rate with such provider [of
     the diagnostic testing], *such plan or issuer shall reimburse the provider in an amount*
4    *that equals the cash price for such service as listed by the provider on a public*
     *internet website, or such plan or issuer may negotiate a rate with such provider for*
5    *less than such cash price.*

6    CARES Act, Pub. L. 116-136 (emphasis added).  On November 6, 2020, the U.S. Departments of the

7    Treasury, Labor, and HHS (collectively, the "Departments") issued their Interim Final Rule, titled

8    "Additional Policy and Regulatory Revisions in Response to the COVID-19 Public Health

9    Emergency."  *See* 85 Fed. Reg. 71142 (hereinafter, the "IFR").   The IFR implemented those

10   requirements in the CARES Act and mandated that providers of COVID-19 diagnostic tests make

11   public their cash prices for those tests. *Id.*  Making this information "public" means posting it in a

12   "conspicuous location on a searchable homepage of the provider's website."[3]

13       For purposes of those requirements, the IFR defined a "provider of a diagnostic test for

14   COVID-19" as "any facility that performs one or more COVID-19 diagnostic tests." 45 C.F.R. §

15   182.20.  Under 42 U.S.C. § 263a, the Centers for Medicare and Medicaid Services ("CMS") regulates

16   all laboratory testing performed on humans for the purposes of diagnoses, prevention, or treatment in

17   the United States through the Clinical Laboratory Improvement Amendments ("CLIA") program.  In

18   the IFR, the Departments clearly stated that, "[i]n order to perform COVID-19 testing, a facility

19   (whether that be a primary care provider's office, urgent care center, outpatient hospital site or stand-

20   alone laboratory) is *required* to hold a CLIA certificate based on the complexity of the testing

21   performed by the facility."  85 Fed. Reg. 71152 (emphasis added).  The Departments stated they

22   "expect that any 'provider of a diagnostic test for COVID-19' would either hold or have submitted a

23   CLIA application necessary to obtain a CLIA certificate (including a certificate of waiver, as

---

24

25   [3]     The IFR required a "provider of a diagnostic test for COVID-19" to "make public . . .
     electronically via the internet . . . in a conspicuous location on a searchable homepage of the provider's
26   website" the following information: (1) a plain-language description of the COVID-19 diagnostic test
     offered; (2) the billing code for each test; (3) the cash price for each test, and (4) "[a]ny additional
27   information as may be necessary for the public to have certainty of the cash price that applies to each
     COVID-19 diagnostic test."  *See* 45 C.F.R. § 182.40(c).  The Departments interpret this to "mean that
28   providers must make public the cash prices for performing COVID-19 diagnostic tests on the
     provider's internet website."  85 Fed. Reg. 71152.

---

-4-

applicable) and that such testing would occur in facilities ranging from primary care provider offices to urgent care centers to stand-alone national laboratories." *Id.*  Thus, only those providers with a CLIA certificate, or a waiver of said certificate, are entitled to their posted cash price under the IFR.[4]

Even then, those CLIA-certified providers are not entitled to post, and demand, any manufactured exorbitant "cash price" for such COVID-19 testing services from insurance companies like Aetna and the self-funded ERISA plans it administers.  The IFR defines "cash price" as **the charge that applies to an individual who pays in cash (or cash equivalent) for a COVID-19 diagnostic test.**  *Id.* at § 182.20.  The Departments further explained their "expectation" that "the 'cash price' established by the provider will be generally similar to, or lower than, rates negotiated with in-network plans and insurers."  *Id.*  Most significantly, the Departments instructed that the "cash price" should be "the maximum charge that may apply to a self-pay individual paying out-of-pocket." *Id.*  As a point of reference for the Court, the average nationwide cost for a COVID-19 test is $150.[5]

It comes as no surprise given the expedited time within which Congress passed these laws — and the Departments were required to implement them — that providers nevertheless began to use the "public health emergency as an opportunity to impose extraordinarily high charges."[6]  In February 2021, the U.S. Treasury noted that law enforcement and financial institutions had detected many types of fraud perpetuated by COVID-19 testing laboratories (many of which sprung up overnight), identifying red flags such as "submitting claims for expensive tests that do not test for COVID, oftentimes in conjunction with COVID testing, such as medically unnecessary and expensive

---

[4]  *See also* Ltr. from Cal. Dep't of Managed Health Care to All Full-Service Commercial and Medi-Cal Managed Care Health Care Service Plans (Apr. 25, 2022), available at https://www.dmhc.ca.gov/Portals/0/Docs/OPL/APL%2022-014%20%20SB%20510%20COVID-19%20Testing%20and%20Vaccination%20Coverage%20Guidance%20(4_25_22).pdf?ver=2022-04-25-170513-017 ("However, the CARES Act's requirement to reimburse providers at their cash price does not apply to all providers who may be involved in an enrollee receiving a COVID-19 test. Rather, the Interim Final Rule . . . clarifies that only those providers who hold a Clinical Laboratory Improvement Amendments (CLIA) certificate (including a CLIA Certificate Waiver) are considered 'providers' for purposes of being reimbursed at the provider's cash price.").

[5]  *See* Meiselbach, Mark et al., *Charges of COVID-19 diagnostic testing and antibody testing across facility types and states*, J. Gen. Intern. Med., 1-4 (Sept. 15, 2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7491868.

[6]  FAQs About [FFCRA] and [CARES] Act Implementation Part 44 (February 26, 2021), Q. 6, available at https://www.cms.gov/files/document/faqs-part-44.pdf.

respiratory testing" and overbilling for testing by upcoding and unbundling.[7]  Despite this pervasive abuse, providers (such as Plaintiff in this case) began to file lawsuits like this one seeking to recoup the exorbitant prices they charged insurance companies and self-funded employer sponsored health plans for COVID-19 tests during our national public health emergency.[8]

## III.   PLAINTIFF'S ALLEGATIONS

Plaintiff is an "urgent care facility" that conducts COVID-19 testing.  *See* Compl.  ¶¶ 10, 42.  Plaintiff operates "seven specimen collection sites."  *Id.* ¶ 10.  Plaintiff does not have a contract with Aetna; it is out-of-network.  *Id.* ¶ 3.  As such, Plaintiff does not have an agreement with Aetna regarding a rate for reimbursement of COVID-19 testing services.  *Id.* ¶ 58.

Plaintiff alleges that it performed COVID-19 testing on patients who participate in Aetna health benefit plans.  *Id.* ¶¶ 5-6.  Plaintiff further alleges that it submitted claims for payment for COVID-19 testing to Aetna electronically, "via the HCFA-1500 forms [which] are uniformly constructed and submitted."  *Id.* ¶ 46.  Aetna reimbursed Plaintiff for COVID testing claims.  *Id.* ¶¶ 48, 49.  Without giving any specifics, Plaintiff contends that although Aetna initially paid Plaintiff its "full posted price," at some point Aetna "ceased paying . . . the full Covid posted prices."  *Id.*  Plaintiff contends that it was Plaintiff's expectation that Aetna would reimburse Plaintiff for COVID-testing claims at Plaintiff's "cash price."  *Id.* ¶ 46.  Significantly, however, Plaintiff's Complaint does not allege its "cash price," where that "cash price" was listed, or what Aetna paid Plaintiff for COVID-19 testing.  *See* generally*, Compl.

Plaintiff alleges that, at some point after it began submitting claims to Aetna for reimbursement of COVID-19 testing services, Aetna requested that Plaintiff submit records to substantiate its claims

---

[7]  *See Advisory on COVID-19 Health Insurance- and Health Care-Related Fraud*, FinCEN Advisory (FIN-2021-A001) (Feb. 2, 2021) (available at https://www.fincen.gov/sites/default/files/advisory/2021-02-02/COVID-19%20Health%20Care%20508%20Final.pdf).  "Unbundling" is defined as "submitting multiple bills for the same service," whereas "upcoding" is defined as "billing for a more expensive service than the patient actually received."  *See* Federal Bureau of Investigation, *Health Care Fraud,* available at https://www.fbi.gov/scams-and-safety/common-scams-and-crimes/health-care-fraud.

[8]  Ken Alltucker, *Labs are charging up to $14,000 for COVID-19 tests.  Insurer claim 'price gouging.'*, USA Today (Sept. 20, 2021), https://www.usatoday.com/story/news/health/2021/09/20/insurers-must-pay-full-cost-coronavirus-tests-under/8367397002/?gnt-cfr=1.

for payment, which it did without objection.  *Id.* ¶ 42.  Although Plaintiff labels Aetna's request for records as "Improper Record Request Scheme," Plaintiff pleads no facts to suggest that Aetna's records request — which is routine practice in the healthcare industry — is somehow unlawful or "improper."  *See id.* ¶¶ 40-49.  Similarly, Plaintiff includes a subheading titled "Aetna's Arbitrary and Inconsistent Review of Requested Records" before Paragraph 46 of the Complaint but does not plead any facts or otherwise explain why Plaintiff contends Aetna's record review was "arbitrary" or "inconsistent" (or why it believes that record review gives rise to any claims).  *See id.* ¶¶ 46-49.  Elsewhere, Plaintiff baldly asserts that Aetna has "mis-adjudicated almost every single Covid Testing claim submitted by Plaintiff" but nowhere does it provide any specific reasons for why it contends Aetna did not properly handle the (unidentified) claims at issue.  *Id.* ¶ 6.  Plaintiff alleges that it made "good faith attempts" to "negotiate an amount to be paid" but does not plead any specific facts about these "attempts."  *Id.* ¶ 46.

Plaintiff has attached partial copies of four Aetna "Explanation of Benefits" documents to its Complaint, which Plaintiff claims "contain[] deductions for the insured's co-pays and deductibles for the COVID Testing."  *See* Compl. ¶ 51, at p. 21-23.  Far from supporting Plaintiff's claim, however, these documents show that Plaintiff billed Aetna approximately ***$1000 for each individual COVID-19 test***.  *Id.* at p. 21-23.  And as part of each test, Plaintiff included separate charges for a patient office visit with a duration of 30-44 minutes (CPT 9920325 for $383), urgent care walk-in charge (CPT S9088 for $364), "swab collection fee" (CPT G2023 for $90) and "COVID protective equipment" (CPT 99072) — presumably a disposable mask — for $85.  These EOBs not only demonstrate the exorbitant amounts Plaintiff billed, but also potentially overbilled by upcoding and unbundling.

Plaintiff's Complaint is heavy on adjectives but light on facts.  The facts as pled do not state a claim for relief, and if anything, instead highlight Plaintiff's unprincipled business practices at a time of national emergency.

## IV.    LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted.  "[T]o survive a motion to

1   dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief

2   that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted);

3   Fed. R. Civ. P. 8(a).  "A claim has facial plausibility when the plaintiff pleads factual content that

4   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5   alleged." *Iqbal*, 556 U.S. at 678.  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion,

6   of entitlement to relief," and the "factual allegations must be enough to raise a right to relief above the

7   speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *see also Eclectic*

8   *Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (to survive a motion to

9   dismiss, "plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility

10  and plausibility'").   And the pleading standard under Rule 8 "demands more than an unadorned, the-

11  defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.

12          Further, Plaintiff's claim under RICO and its fraud claim under the California Unfair

13  Competition Law, are subject to the heightened pleading standards imposed by Fed. R. Civ. P. 9(b) —

14  which requires that fraud claims be pled with particularity.  *Edwards v. Marin Park, Inc.*, 356 F.3d

15  1058, 1065-66 (9th Cir. 2004).  To sustain a claim, a plaintiff must plead the "who, what, when, where,

16  and how of the misconduct charged, including what is false or misleading about a statement and why

17  it is false."  *See Puri v. Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017) (quotations omitted).

18  **V.     ARGUMENT**

19          **A.  PLAINTIFF'S FFCRA/CARES ACT CLAIM (COUNT I) FAILS.**

20          Count I fails as a matter of law because, despite Plaintiff's attempt to invoke the FFCRA and

21  the CARES Act to justify charging exorbitant rates for critical health care services during a global

22  pandemic, these statutes do not provide a private right of action.  And even if they did, Plaintiff has

23  failed to plausibly allege that it is entitled to recoup any posted "cash price" under the applicable laws.

24          **1.  There Is No Private Right Of Action Under The FFCRA Or The CARES Act.**

25          This Court already held that this Plaintiff does not have a private right of action under the

26  FFCRA and the CARES Act.  *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, Nos. 22-cv-01696-JSC, 22-

27  cv-01702-JSC,  22-cv-01703-JSC,  22-cv-01704-JSC,  22-cv-01706-JSC,  2022  U.S.  Dist.  LEXIS

28  111620, at *13 (N.D. Cal. June 23, 2022) ("*Saloojas I*") ("The CARES Act does not provide an implied

private right of action for Plaintiff to seek reimbursement of its posted cash price" and dismissing Plaintiff's claims). In so holding, this Court found "[t]he text and structure of the CARES Act do not show congressional intent to create a private right of action for COVID-19 providers like Plaintiff[]" because the CARES Act solely creates rights and duties for providers. *Id.* at *8. The Court further considered the factors set forth by *Cort v. Ash*, 422 U.S. 66 (1975) and determined that the most important factor — whether "there is any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one"— did not exist under the CARES Act. *Id.* at *11-12.

In the interest of conserving judicial and litigant resources, Aetna will not further brief this issue. Instead, Aetna respectfully requests that for the reasons set forth in *Saloojas I*, the Court arrive at the same conclusion and find that neither the FFCRA nor the CARES Act provide a private right of action for Plaintiff to seek reimbursement of its posted cash price. *Id.*; *see also Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20cv1675(JBA), 2022 U.S. Dist. LEXIS 43351, at *14 (D. Conn. Mar. 11, 2022).

### 2. Plaintiff Fails To State Any Plausible Claim For Reimbursement Of Its Posted "Cash Price."

The crux of Plaintiff's Complaint is that it is entitled to receive its posted "cash price" for providing COVID-19 testing. Compl. ¶¶ 46, 60, 61, 76, 93. Notably, the Complaint does not identify the actual "cash price" Plaintiff seeks to recover. Plaintiff's failure to allege the specific "cash price" it seeks with this lawsuit is wholly insufficient to put Aetna on notice of the claims against it and the relief sought. *See Twombly*, 550 U.S. at 555-56 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (noting that under Rule 8(a), a complaint must contain "sufficient allegations to put defendants fairly on notice of the claims against them"). Because *all* of Plaintiff's claims depend on its supposedly publicly posted (yet unalleged and undisclosed) "cash price" for COVID-19 testing, all of Plaintiff's claims fail and should be dismissed.

Moreover, Plaintiff's attempt to recoup its supposedly publicly posted "cash price" for COVID-19 testing nevertheless fails because it does not meet the prerequisites to do so under the

FFCRA and the CARES Act.  Specifically: (1) Plaintiff does not plead sufficient allegations that it has obtained or applied for a CLIA certificate or a waiver; and (2) Plaintiff did not publicly disclose its "cash price."

### a. Plaintiff does not allege it is a CLIA-certified provider.

As a threshold matter, in order to be entitled to reimbursement of its "cash price," a provider must have "either h[e]ld or have submitted a CLIA application necessary to obtain a CLIA certificate (including a certificate of waiver, as applicable)[.]"  85 Fed. Reg. 71152.  In unequivocal language in the IFR, the Departments stated that "[i]n order to perform COVID-19 testing, a facility (whether that be a primary care provider's office, urgent care center, outpatient hospital site or stand-alone laboratory) is *required* to hold a CLIA certificate based on the complexity of the testing performed by the facility."  *Id.*  (emphasis added).[9]

In the Complaint, Plaintiff alleges that it "acted as a medical facility and provider has all authorizations and/or approvals necessary to render and be reimbursed for Covid Testing services."  Compl. ¶ 10.  Plaintiff does not, however, allege it held the requisite CLIA certificate or submitted the application such that it is entitled to reimbursement of its alleged "cash price."   This failure alone falls short of the *Iqbal* and *Twombly* pleading standards.

Plaintiff's failure to plead it is a CLIA certified laboratory is telling.  For this reason, counsel for Aetna performed a search on the U.S. Center for Disease Control and Prevention's publicly-available CLIA laboratory and confirmed that neither Plaintiff nor its d/b/a entity, AFC Urgent Care of Newark ("AFC Urgent Care") (Compl. at p. 1) maintains such a CLIA certificate.  *See* Declaration of Courtney E. Walter ("Walter Decl.") at ¶¶ 2-4.

Plaintiff's publicly-available websites for Saloojas, Inc. and AFC Urgent Care are also relevant to this issue.  The AFC Urgent Care website[10] does not mention a CLIA certification *at all*.   On the Saloojas website, Plaintiff represents that it is a "CLIA Certified National Lab," but elsewhere on the website, Plaintiff states something different. This website states: "We pack your SPECIAL NASAL SWAB in Cold Container and send to CLIA Registered lab"; "The National Lab will Bill directly to

---

[9]   *See also supra* n. 4.

[10]   *See* https://www.afcurgentcare.com/newark/.

the Insurance RT PCR done at CLIA Certified Lab Quest/Labcorp/Basis"; and "We Bill Rapid NAAT test Abbott at CLIA waved (sic) lab." Thus it appears Plaintiff actually *outsources* the testing to CLIA-certified laboratories. ***That is not enough.*** The IFR clearly stated that the Departments of Treasury, Labor, and HHS "expect that *any* 'provider of a diagnostic test for COVID-19' would either hold or have submitted a CLIA application necessary to obtain a CLIA certificate (including a certificate of waiver, as applicable) and that such testing would occur in facilities ranging from primary care provider offices to urgent care centers to stand-alone national laboratories." *Id.* (emphasis added). Nothing in FFCRA, the CARES Act, or implementing regulations says anything about a provider without a CLIA certificate being able to outsource the laboratory services to a third party yet still receive their posted "cash price" for those testing services under the law.

Each of Plaintiff's claims hinges on a supposed entitlement to a "cash price" under the FFCRA and the CARES Act. Because Plaintiff has not, and cannot, allege that it is a CLIA-certified qualified "provider of a diagnostic test for COVID-19" under the applicable law, all of Plaintiff's claims seeking its posted "cash price" fail.

### b.  Plaintiff did not disclose its "cash price."

The CARES Act only provides for the reimbursement of the "cash price" to a "provider of a diagnostic test for COVID-19." *See* CARES Act, Pub. L. 116-136.  However, when a provider fails to publicly post its "cash price," it cannot claim entitlement to payment under the CARES Act.  As the CMS has explained, "[t]he requirement imposed by Section 3202(a) of the CARES Act to reimburse the provider an amount that equals the cash price of a COVID-19 test is ***contingent upon the provider making public the cash*** price ***for the test,*** as required by Section 3202(b) of the CARES Act." (emphasis added).[11]  Further, under the CARES Act's implementing regulations, "cash price" means "the charge that applies to an ***individual*** who pays cash (or a cash equivalent) for a COVID-19 diagnostic test."  45 C.F.R. § 182.20 (emphasis added).

Plaintiff's publicly-available website for Saloojas, Inc.[12] states that individuals will never pay

---

[11]    FAQs About [FFCRA] and [CARES] Act Implementation Part 43 (June 23, 2020), Q. 11, https://www.cms.gov/files/document/FFCRA-Part-43-FAQs.pdf.

[12]    Because the Complaint references Plaintiff's cash prices, and its alleged cash prices are integral to its claim against Aetna, the Court can consider the website on this motion. *Marder v. Lopez*, 450

for testing: "NO OUT OF POCKET COST[.]"  Plaintiff's website for AFC Urgent Care also does not mention specific pricing.  Because Plaintiff did not post any "cash price" for a COVID-19 test that would be charged to "*an individual who pays cash*," Plaintiff is not eligible to seek any other cash price.  Put simply, ***Plaintiff's posted cash price for an individual paying cash is zero dollars***; therefore, it cannot now seek any additional, higher cash price from Aetna and its self-insured plans that was not made public.[13]

## B.  PLAINTIFF'S ERISA CLAIM (COUNT II) FAILS.

In Count II, Plaintiff alleges a claim under Section 502(a)(1)(B) of ERISA, seeking the benefits available under the individual patients' ERISA-governed plans.   For the reasons set forth below, Count II fails.

### 1.  Plaintiff Lacks Standing To Bring A Claim Under ERISA § 502(a)(1)(B).

ERISA "does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27 (1983).  That is because ERISA is "designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983).  Limiting the universe of plaintiffs who have the right to sue under ERISA advances "ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred."  *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002).

---

F.3d 445, 448 (9th Cir. 2006) (on a motion to dismiss, a court may consider evidence if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion"); *see also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1203-04 (N.D. Cal. 2014) (noting that in ruling on a Rule 12(b)(6) motion, the Court may consider "any relevant matters subject to judicial notice" including publicly accessible websites); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965 (C.D. Cal. 2005) (finding a request for judicial notice of a website was proper).

[13]     In the IFR, the Departments further state that "[w]e do not believe that posting a 'cash price' should prevent a provider . . . from offering testing for free to individuals as charity care or in an effort to combat the public health crisis; rather, the 'cash price' would be the maximum charge that may apply to a *self-pay individual paying out of pocket*."  85 Fed. Reg. 71152 (emphasis added).  First, there is nothing to suggest that Plaintiff was intending to be charitable by stating that it did not require an out-of-pocket cost.  But second, the IFR still requires that Plaintiff publicly posted a maximum individual charge in order to receive reimbursement.  And here, it did not.

Providers like Plaintiff are not included in the list of entities with granted statutory right to sue. *See DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 876 (9th Cir. 2017). Rather, Plaintiff has only the derivative right to pursue a claim for ERISA benefits in a narrow exception when based on a "valid assignment" from a plan participant or beneficiary.  *Id.*; *Misic v. Bldg. Servs. Emps. Health & Welfare Tr.*, 789 F.2d 1374, 1378 (9th Cir. 1986) (*per curiam*) (concluding that a health care provider had standing to sue in place of his assignors, pursuant to "valid assignment[s]" of the right to reimbursement under a health care plan).  A plaintiff "bear[s] the burden of showing that [its] assignments are valid."  *Bristol SL Holdings, Inc. v. United Healthcare Servs.*, No. SACV 19-0710-DOC (DFMx), 2019 U.S. Dist. LEXIS 208361, at *9 (C.D. Cal. Oct. 7, 2019).

Plaintiff's allegations here fall far short of that narrow exception.  Plaintiff merely alleges: "Many of the members of plans either insured or administered by Aetna who received Covid Testing services from Plaintiff executed assignment of benefits documents."  Compl. ¶ 68.  Tellingly, the Complaint: (1) does not allege the language of what any of those supposed assignments actually say about what rights have been assigned or attach a copy of said assignments; (2) does not identify a single member who allegedly executed an assignment; and (3) does not identify a single ERISA-governed plan under which a member's rights were allegedly assigned (and certainly fails to account for anti-assignment provisions in some or all of those plans).  Plaintiff's threadbare assertions around obtaining "assignments" (Compl. ¶ 68) are wholly inadequate to plead ERISA standing, and Count II should be dismissed on this basis alone.  *See, e.g.*, *Cty. of Monterey v. Blue Cross of Cal.*, No. 17-CV-04260-LHK, 2019 U.S. Dist. LEXIS 13392, at *17 (N.D. Cal. Jan. 28, 2019) ("The Court agrees with Anthem that, at bare minimum, Natividad should allege the specific language of the assignment itself. This is because whether an assignee has standing to sue under ERISA depends on whether the claims at issue fall within the scope of the assignment."); *Creative Care Inc. v. Conn. Gen. Life Ins. Co.*, No. CV 16-9056-DMG (AGRx), 2017 U.S. Dist. LEXIS 216871, at *8 (C.D. Cal. July 5, 2017) (granting a motion to dismiss because the plaintiff did "not plead sufficient factual allegations about the assignments" and therefore rejected the "conclusion that [plaintiff] has a derivative right to sue for benefits under ERISA on behalf of the Patients").

Further, to the extent Plaintiff purports to seek "equitable reformation" of the plans (Compl. ¶ 77), Plaintiff's conclusory allegation that "[m]any of the members of plans either insured or administered by Aetna who received Covid Testing services from Plaintiff executed assignment of benefits documents," Compl. ¶ 68, says nothing about whether such patients assigned their right to assert equitable claims. *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014) (finding a plaintiff did not have the right to bring a claim for breach of fiduciary duty because it was only assigned the right to bring claims for payments of benefits); *Murphy Med. Assocs.*, 2022 U.S. Dist. LEXIS 43351, at *17 (finding that the plaintiff's patients "cannot be said to have assigned the right to reform their health plans where they limited their assignment to claims for medical benefits" and holding that the plaintiff "lacks standing to request declaratory or injunctive relief under ERISA 502(a)(3) [29 U.S.C. § 1132(a)(3)]").

### 2. Plaintiff Failed To Exhaust Administrative Remedies.

It is well-established that a plaintiff must exhaust administrative remedies under the relevant benefit plan prior to bringing an ERISA claim in federal court. *Diaz v. United Agr. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995). "Although not explicitly set out in the statute, the exhaustion doctrine is consistent with ERISA's background, structure and legislative history and serves several important policy considerations, including the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a non-adversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise." *Id.* (citing *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir. 1980)). "[F]ederal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and [ ] as a matter of sound policy they should usually do so." *Amato*, 618 F.2d at 568.

As with its assignment allegations, Plaintiff simply claims, in a wholly conclusory manner, that it "has exhausted available administrative remedies[.]" Compl. ¶ 73. Yet Plaintiff fails to provide any facts to support this allegation. Each ERISA-governed benefit plan is required to maintain its own claims and appeals process. *See* 29 C.F.R. § 2560.503-1. But Plaintiff has not identified a single benefit plan at issue, let alone what it did to exhaust the unique administrative process under each one.

-14-

1    Plaintiff's conclusory allegations of exhaustion are plainly insufficient.  *See Iqbal*, 556 U.S. at 678;

2    *Twombly*, 550 U.S. at 555-56.

3        Plaintiff also has not sufficiently alleged that exhaustion would be "futile."  *See* Compl. ¶ 73.

4    "[B]are assertions of futility are insufficient," and the exception requires more than speculation

5    regarding the outcome of an administrative appeal.  *Diaz*, 50 F.3d at 1485.  The futility exception "is

6    designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail."

7    *Id.*  "[S]imply claiming futility without any other factual basis showing futility is not enough."

8    *See Simi Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.*, No. 2:17-cv-02685-SVW-AS, 2018 U.S. Dist.

9    LEXIS 199045, at *11 n.3 (C.D. Cal. Jan. 4, 2018).  If Plaintiff insists that attempting to exhaust

10   administrative remedies would indeed be futile (Compl. ¶ 73), it must set forth factual allegations

11   explaining *why*, which it clearly has not.  *See Grenell v. Ups Health & Welfare Package*, 390 F. Supp.

12   2d 932, 935 (C.D. Cal. 2005).

13       Plaintiff also alleges that Aetna has "failed to comply with or strictly adhere to the minimum

14   requirements of the internal claims and appeals processes[,]" and therefore "any administrative

15   remedies are deemed to have been exhausted[.]" Compl. ¶¶ 71-73. Once again, such vague allegations

16   are insufficient to excuse exhaustion.  *See, e.g.*, *Korman v. ILWU-PMA Claims Office*, No. 2:18-cv-

17   07516-SVW-JPR, 2019 U.S. Dist. LEXIS 58646, at *42 (C.D. Cal. Mar. 19, 2019) (granting motion

18   to dismiss where plaintiff did not sufficiently allege "exhaustion of administrative remedies" but

19   instead "reli[ed] vaguely on excuses to administrative exhaustion"); *Neurological Surgery, P.C. v.

20   Aetna Health Inc.*, 511 F. Supp. 3d 267, 294 (E.D.N.Y. 2021) (rejecting non-specific allegations

21   without "fundamental details" that "all conditions precedent including the exhaustion of administrative

22   remedies to maintaining this action have been performed or have occurred" and deeming such

23   allegation insufficient); *Adan v. Kaiser Found. Health Plan, Inc.*, No. 17-cv-01076-HSG, 2018 U.S.

24   Dist. LEXIS 36683, at *17 (N.D. Cal. Mar. 6, 2018) (dismissing a plaintiff's complaint because it

25   "entirely fail[ed] to allegation exhaustion" and "simply ma[de] no allegations relating to [t]he

26   defendant's dispute resolution practices").

27       Contrary to Plaintiff's suggestion, the claims procedure regulations do not require strict

28

-15-

compliance.[14]  Rather, it is well-established in this Circuit, and others,[15] that plan administrators need only "substantially comply" with the claims procedure regulations.  *See Barnes v. AT&T Pension Benefit Plan*, No. C-08-4058 EMC, 2012 U.S. Dist. LEXIS 65819, at *13 (N.D. Cal. May 10, 2012) (citing *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1032 (9th Cir. 2006)).  In this regard, when there has been a purported failure to comply with the letter of the claims procedure regulations, the usual remedy is "to remand to the plan administrator so the claimant gets the benefit of a full and fair review."  *Chuck*, 455 F.3d at 1035; *see also Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir. 1984)).

As discussed above, Plaintiff has not alleged (nor can it) that it attempted to comply with the administrative review process by submitting separate administrative appeals for each of the individual testing claims.  Rather, Plaintiff purports it attempted to "mass appeal" all of its claims at once by questioning Aetna's "patterns and practices" (Compl.¶ 72) and now complains that Aetna has not complied with the claims procedure regulations.  But ERISA does not require special accommodations for providers to mass appeal, nor is such an arrangement feasible given the individual nature of each medical claim.  Count II should be dismissed for Plaintiff's failure to exhaust administrative remedies.

### 3.   Plaintiff Fails To State An ERISA Claim For Benefits.

Though Plaintiff styles Count II as a "Violation of Section 502(a)(1)(B) of ERISA," Plaintiff seeks both: (1) "payment, pursuant to the FFCRA and the CARES Act for the *bona fide* Covid Testing services provided to Aetna members" and (2) "equitable reformation" for the ERISA "plans that do not comply with the FFCRA and the CARES Act at issue[.]" Compl. ¶¶ 76-77.  Both of these claims fail.

### a.   Plaintiff fails to adequately plead a claim for benefits.

To state a claim for benefits under ERISA § 502(a)(1)(B), "a plaintiff must allege facts that

---

[14]     *See* 29 C.F.R. § 2560.503-1(l).

[15]     *See, e.g., Larson v. Old Dominion Freight Line, Inc.*, 277 Fed. App'x 318, 321 (4th Cir. 2008); *Robinson v. Aetna Life. Ins. Co.*, 443 F.3d 389, 392 (5th Cir. 2006) ("Challenges to ERISA procedures are evaluated under a substantial compliance standard."); *Wade v. Hewlett Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539-40 (5th Cir. 2007); *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir.1992) ("In determining whether a plan complies with the applicable regulations, substantial compliance is sufficient.").

establish the existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits." *Rj v. Cigna Behavioral Health*, No. 5:20-cv-02255-EJD, 2021 U.S. Dist. LEXIS 55023, at *7-8 (N.D. Cal. Mar. 23, 2021); *see also Glendale Outpatient Surgery Ctr. v. United Healthcare Servs.*, 805 F. App'x 530, 531 (9th Cir. 2020) (affirming dismissal of ERISA claim because plaintiff failed to identify "(i) any ERISA plan, apart from vague references to anonymous patients who allegedly assigned rights[]; or (ii) any plan terms that specify benefits that the defendants were obligated to pay but failed to pay"); *Brand Tarzana Surgical Inst., Inc. v. Blue Cross & Blue Shield*, 833 F. App'x 714, 715 (9th Cir. 2021) ("Brand fails to allege that the plans at issue for its sixteen claims here are even ERISA plans, and fails to allege provisions in those plans . . . that would entitle Brand to the reimbursements it claims.").  Here, Plaintiff fails to sufficiently allege either of these basic requirements.

First, though the Complaint generally references "employer-sponsored plans" and "ERISA health plans" (Compl. ¶¶ 12, 64-78), it fails to identify any *specific* ERISA-governed plan at issue. For that reason alone, Plaintiff's claim for benefits under ERISA § 502(a)(1)(B) cannot survive.  *See Akhlaghi v. Cigna Corp.*, No. 19-cv-03754-JST, 2019 U.S. Dist. LEXIS 240174, at *6-7 (N.D. Cal. Oct. 23, 2019) (finding allegations that a plaintiff was "(1) covered under an ERISA health plan through her employer" and "(2) covered under an employee benefit plan regulated by ERISA, pursuant to which Plaintiff is entitled to health care benefits" fail to "raise the existence of an ERISA plan above the speculative level"); *Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins. Co.*, No. 10-CV-04911-EJD, 2011 U.S. Dist. LEXIS 75433, at *13 (N.D. Cal. July 13, 2011) ("Failure to identify the controlling ERISA plans makes a complaint unclear and ambiguous."); *Bristol SL Holdings, Inc.*, 2019 U.S. Dist. LEXIS 206816, at *5 (dismissing claim under ERISA § 502(a)(1)(B) because plaintiffs' "conclusory assertion" that "most of the claims at issue in this case are subject to ERISA . . . fails to sufficiently allege the plans at issue were subject to ERISA").

Second, given that the Complaint does not identify any specific ERISA-governed *plan*, it also fails to identify what specific *terms* of each plan requires payment of the benefits Plaintiff seeks. Courts in this Circuit have repeatedly made clear that, to plead a plausible claim under ERISA section 502(a)(1)(B), a plaintiff must establish "the provisions of the plan that entitle it to benefits." *Almont*

*Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015), *aff'd*, 771 F. App'x 774 (9th Cir. 2019); *see also Forest Ambulatory Surgical*, 2011 U.S. Dist. LEXIS 75433, at *14 (dismissing an ERISA claim for failure to meet the *Twombly* and *Iqbal* standard where the "conclusory allegations" included those that the agreements "include employee welfare benefit plans covered by ERISA," and that under the terms, the insurer was obligated to pay the amount of the claims submitted under the ERISA); *Samaan v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 20-4332-DMG (GJSx), 2021 U.S. Dist. LEXIS 127328, at *14 (C.D. Cal. Mar. 10, 2021) (concluding that providing the court with judicial notice of the applicable plan without "specifically identifying the plan terms at issue" was insufficient).  This requirement involves more than a conclusory allegation that the plans "require" Aetna to pay what the Plaintiff is seeking.

Plaintiff not only fails to identify the specific plans at issue but fails to allege the specific plan terms that govern payment with any level of requisite specificity.  This is insufficient to state an ERISA claim for benefits.  *See Simi*, 2018 U.S. Dist. LEXIS 199045, at *6 ("Simi has not stated a claim for plan benefits because Simi has not identified any of the ERISA plans or specific plan terms that would entitle it to benefits."); *Forest*, 2011 U.S. Dist. LEXIS 75433, at *13-14 (finding that plaintiff's deficiencies in pleading sufficient facts to demonstrate the existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits "mandate the dismissal of the ERISA cause of action").

> b.     *Plaintiff's request for "equitable reformation" should be disregarded.*

Count II is plainly styled as a "Violation of Section 502(a)(1)(B) of ERISA."  But Section 502(a)(1)(B) of ERISA solely provides for the award of benefits, not equitable relief.  *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought — by a participant or beneficiary  — . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]").  For this reason alone, Plaintiff's one-sentence request for "equitable reformation" of the plans (Compl. ¶ 77) should be disregarded.

### C.  PLAINTIFF'S RICO CLAIM (COUNT III) FAILS.

In addition to Plaintiff's claims under ERISA, the FFCRA, and the CARES Act (which should be dismissed for the reasons set forth above), Plaintiff tacks on a threadbare — and baseless — RICO

-18-

claim.  Plaintiff's RICO claim consists of a recitation of the RICO elements and the thin, conclusory allegation that Aetna somehow engaged in mail and wire fraud and "embezzlement and/or conversion of self-funded plans assets [sic]."  Compl. ¶¶ 79-85; *see, e.g.*, *Zacharias v. JP Morgan Chase Bank, N.A.*, No. 12-cv-06525-SC, 2013 U.S. Dist. LEXIS 20258, at *9-10 (N.D. Cal. Feb. 13, 2013).  To plead a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege facts in support of (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property.  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).  "Racketeering activity is any act indictable under the several provisions of Title 18 of the United States Code" as set forth in 18 U.S.C. § 1961(1).  *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004).  "To plead a RICO pattern, at least two predicate acts of racketeering activity need to be alleged."  *Synopsis, Inc v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077 (N.D. Cal. 2018).

### 1.  Plaintiff Has Not Pled Any Predicate Acts.

Plaintiff has not pled any "predicate acts" necessary to sustain a RICO claim, much less with the particularity required by Rule 9(b).  *Edwards*, 356 F.3d at 1065 (requiring pleader of RICO fraud claim to allege the time, place, and specific content of the false representations as well as the identities of the parties to the representation).  In its Complaint, Plaintiff vaguely asserts that Aetna's "pattern of racketeering activity . . . includes Aetna's multiple, repeated, and continuous use of the mails and wire in furtherance of the Improper Record Request Scheme, meritless claims and appeals processes, its disinformation campaign in violation of 18 U.S.C. §§ 1341 and 1343, and embezzlement and/or conversion of self-funded plan assets through its CRS Benchmark Program in violation 18 U.S.C. § 664 [sic]."  Compl. ¶ 83.  But Plaintiff's allegations of mail and wire fraud (in violation of 18 U.S.C. §§ 1341 and 1343) and embezzlement in violation of 18 U.S.C. § 664 are devoid of factual support and do not satisfy Rule 9(b)'s high bar.  "[T]he plaintiff must allege 'the who, what, when, where, and how of the misconduct charged,' including what is false or misleading about a statement, and why it is false."  *Puri*, 674 F. App'x at 687.

First, Plaintiff has not pled any facts — let alone specific facts — to support its claim of mail and wire fraud.  "To state a claim based on the predicate acts of mail and wire fraud, a plaintiff must plead, in addition to the other elements of a RICO claim, (1) a scheme or artifice devised with (2) the

-19-

specific intent to defraud and (3) use of the United States mail or interstate telephone wire in furtherance thereof." *R&R Surgical Inst. v. Int'l Longshore & Warehouse Union*, No. 21-cv-00640, 2022 U.S. Dist. LEXIS 87776, at *16-19 (C.D. Cal. Mar. 8, 2022) (citing *Orr v. Bank of Am.*, 285 F.3d 764, 782 (9th Cir. 2002)).  Plaintiff's Complaint does not identify any specific communication, much less a misrepresentation or the who, what, when, where, and how of a purported communication. *See Pac. Recovery Sols. v. Cigna Behavioral Health, Inc*., No. 5:20-cv-02251, 2021 U.S. Dist. LEXIS 59779, at *28 (N.D. Cal. Mar. 29, 2021) (dismissing RICO claim where a plaintiff failed to identify the "who, what, when, where, and how" of any particular fraudulent communication).  Indeed, the section of Plaintiff's Complaint titled "Details of Aetna's Improper Record Request Scheme" contains no specific factual allegations whatsoever.  *See* Compl. ¶¶ 42-45.  Nor does the Complaint explain, even at a general level, how Aetna's record requests to Plaintiff were fraudulent (*i.e.,* that they contained false representations on which Plaintiff relied to its detriment).  Plaintiff's failure to identify any allegedly fraudulent communication is fatal to its RICO claim.  *Edwards*, 356 F.3d at 1065-66.

More fundamentally, Plaintiff's RICO claim must be dismissed because "the Complaint lacks sufficient factual allegations to support a reasonable inference that [Aetna] acted with specific intent to deceive or defraud."  *Pac. Recovery Sols.*, 2021 U.S. Dist. LEXIS 59779, at *32-33.  The gravamen of Plaintiff's Complaint concerns Aetna's alleged failure to reimburse Plaintiff the full measure of its billed charges for COVID-19 testing, as well as Aetna's requests for records from Plaintiff regarding the COVID-19 testing at issue and allegedly "inconsistent" review of those records.  *See generally* Compl.  Nowhere, however, does Plaintiff allege any facts that support an inference that Aetna's COVID-19 testing reimbursement practices were motivated by the "requisite intent to deceive and cheat."  *Id*.

*R&R Surgical* is instructive.  There, a surgery center brought a RICO claim against a health plan, arguing that the health plan's denial of out-of-network reimbursement for surgical services rendered amounted to mail and wire fraud.  *R&R Surgical Inst.*, 2022 U.S. Dist. LEXIS 87776, at *16-19.  The surgery center alleged that the health plan pre-authorized surgical service, but failed to pay for those services after they were performed, despite the pre-authorization.  The surgery center contended that the plan had a fraudulent motive to deny the claims — to convert those excess funds

for its own use.  But despite the fact that the surgery center in *R&R Surgical* (unlike Plaintiff here) specifically identified each communication it believed to be fraudulent and **how** the communications were fraudulent, the court dismissed the plaintiff's RICO claim, reasoning that "it is conclusory to leap from Defendants' alleged denial of claims or failure to pay at the represented rate to a coordinated scheme to defraud providers in order to convert trust funds."  *Id.* at 19.

The reasoning in *R&R Surgical* applies with even more force here.  Unlike in *R&R*, Plaintiff has not identified any specific communication, misrepresentation, or other *indicia* of fraud — because there is none.  And as the *R&R Surgical* court held, vague allegations of a defendant's financial motive to deny health care claims do not suffice to "allege intent to defraud with enough particularity to satisfy *Twombly* or *Iqbal* or with enough specificity to satisfy Rule 9(b)."  *Id.* at *19-20.

Finally, Plaintiff has pled no facts whatsoever in support of its claim that Aetna has engaged in "embezzlement and/or conversion of self-funded plans assets [sic]."  Plaintiff's bare-bones embezzlement allegation does not support a RICO claim.  *See id.* at *20-21 (finding allegation that health plan denied claims to convert funds "conclusory at best and insufficient to make out a claim for embezzlement under RICO"); *see also In re WellPoint, Inc. Out-of-Network Rates Litig.*, 903 F. Supp. 2d 880, 917 (C.D. Cal. 2012) ("[T]o permit a cause of action for embezzlement [based on health plan claims handling] would open the door to an embezzlement claim every time a participant brought a run-of-the-mill action for nonpayment of benefits . . .").  In sum, Plaintiff has failed to plead any "predicate act" under RICO, and Plaintiff's RICO claim must be dismissed.  *Id.*; *see also Pac. Recovery Sols.*, 2021 U.S. Dist. LEXIS 59779, at *32-33.

## 2.  Plaintiff Fails To Plead An Enterprise.

Plaintiff also fails to plausibly allege that Aetna joined a separate criminal enterprise with the (unidentified) health plans that Aetna administers. 18 U.S.C. § 1962(c). An association-in-fact enterprise — the kind that Plaintiff attempts baselessly to allege here — requires allegations of "an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  "Simply characterizing routine commercial dealings as a RICO enterprise is not enough."  *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019).  Instead, Plaintiff must show that the enterprise acted with a common

1    purpose and that Aetna operated or managed the affairs of an alleged enterprise rather than its own

2    affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  Mere allegations that defendants acted

3    "in their individual capacities, to advance their individual self-interests" are wholly insufficient.

4    *United Food & Com. Worker Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719

5    F.3d 849, 854 (7th Cir. 2013).

6        Plaintiff alleges no facts to show that Aetna joined an enterprise with "Employer Plans and

7    self-funded health plans that Aetna administers."  Compl. ¶¶ 81–82.  Plaintiff does not even identify

8    a single health plan by name. At best, Plaintiff attempts to allege a contractual relationship between

9    *unidentified* self-funded health plans and Aetna for COVID testing services. *Id.* ¶¶ 74–75, 81–82. But

10   simply alleging "contractual relationships" and other "routine commercial dealings [are] insufficient

11   to establish RICO liability." *Rj*, 2021 U.S. Dist. LEXIS 55023, at *21-22 (holding that the plaintiff's

12   allegation that Cigna contracted with Viant to negotiate amounts to pay for out-of-network fails to

13   prove an enterprise); *In re WellPoint, Inc.*, 903 F. Supp. 2d at 910 ("The existence of a business

14   relationship between WellPoint, Ingenix, and the Insurance Defendants without more does not show

15   that WellPoint conducted the enterprise.").  Plaintiff's RICO allegations demonstrate nothing more

16   than Aetna (and its health plan clients) conducting business as usual.

17       Plaintiff's other allegations are contrary — or even hostile — to a single enterprise with a

18   common purpose.  The alleged enterprise *harms* the self-funded health plans. *See* Compl. ¶ 75

19   ("Aetna' failures to pay Plaintiff in full for covered Covid Testing services rendered to the members

20   constitutes a breach of these self-funded health plans."); *id.* ¶ 15 ("Aetna has set up complex processes

21   and procedures . . . to disinform . . . the Employer plans and other self-funded health plans that it

22   administers"); *id.*  ¶ 67 ("Aetna's denials and mis-adjudication of Covid Testing claims submitted by

23   Plaintiff on behalf of members of self-funded health plans administered by Aetna (*e.g.,* Employer

24   Plans) are a violation of the requirements of self-funded ERISA health plans.").  Put differently,

25   Plaintiff's allegations counsel *against* an enterprise with a common purpose because no unnamed self-

26

27

28

NOTICE OF MOTION, MOTION TO DISMISS, AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS
Case No.:  3:22-cv-02887-JSC

1    funded plan would sign-up to join an enterprise set on harming it.  Without a common purpose,

2    Plaintiff's RICO claim fails.[16]

### D.  ERISA PREEMPTS PLAINTIFF'S STATE LAW CLAIMS (COUNTS IV-VI) FOR ALL MEMBER CLAIMS ARISING UNDER EMPLOYEE BENEFIT PLANS.

ERISA is a "comprehensive" and "closely integrated regulatory system" that is "designed to

promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand*

*Co. v. McClendon*, 498 U.S. 133, 137, (1990).  The primary objective of ERISA is to "provide a

uniform regulatory regime over employee benefit plans."  *Aetna Health Inc. v. Davila*, 542 U.S. 200,

208, (2004).  To accomplish this objective, Section 514(a) of ERISA broadly preempts "any and all

State laws insofar as they may now or hereafter *relate to* any employee benefit plan" covered by

ERISA.  29 U.S.C. § 1144(a) (emphasis added).  The term "state law" encompasses not only statutes

but also common law causes of action.  *See* 29 U.S.C. § 1144(c)(1) ("The term 'State law' includes all

laws, decisions, rules, regulations, or other State action having the effect of law....").

Furthermore, when a state law claim may fairly be viewed as an alternative means of

recovering benefits allegedly due under ERISA, any such state law claims will be preempted.  *See*

*Davila*, 542 U.S. at 209 (2004) ("[A]ny state-law cause of action that duplicates, supplements, or

supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make

the ERISA remedy exclusive and is therefore pre-empted.").

Plaintiff attempts to raise three claims under California statutory and common law.  *See* Counts

IV-VI.  But, it is undisputed that some, if not *all*, of Plaintiff's testing claims are for services rendered

to Aetna members who participate in ERISA-governed plans.  *See, e.g.,* Count II, and Compl ¶¶ 12,

64-78 (referring to ERISA, Employer Plans or "employer-sponsored benefit plans").  For those

member claims arising under ERISA-governed plans, Plaintiff's state law claims are unquestionably

preempted by ERISA.  *See Cal. Spine & Neurosurgery Inst. v. JP Morgan Chase & Co.*, No. 19-cv-

03552-PJH, 2019 U.S. Dist. LEXIS 220044, at *11-17 (N.D. Cal. Dec. 23, 2019) (finding that a

---

[16]     Plaintiff's RICO claim also fails because just has it has failed to plead a single predicate act, it has failed to plead the required "pattern" of racketeering activity.  Similarly, because Plaintiff has failed to plead a predicate act it has also failed to plead that any such act was a proximate cause of its alleged injury.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

plaintiff's claim for promissory estoppel was preempted by ERISA because it was premised upon the existence of the ERISA plan terms and therefore have "reference to" the plan); *Cleghorn v. Blue Shield*, 408 F.3d 1222, 1226-27 (9th Cir. 2005) (affirming the district court's dismissal of state law claims, including a UCL claim, because the state-law claims arose from the insurer's denial of benefits under an ERISA plan, and "[a]rtful pleading does not alter the potential for th[e] suit to frustrate the objectives of ERISA").

### E.  PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED.

#### 1.  Plaintiff Does Not Plausibly Allege That Any Member Claims Are Subject To California Law.

Though Plaintiff repeatedly references ERISA health plans and "Employer Plans" (*i.e.*, ERISA-governed plans), it also occasionally references that its claims arise from "a variety of health benefit plans." Compl. ¶ 11.  For two of Plaintiff's state-law claims (promissory estoppel and injunctive relief), Plaintiff adds the parenthetical ("non-ERISA") but provides no indication whatsoever what this means.  It is entirely unclear whether Plaintiff contends some subset of its member claims arise under non-ERISA plans and if so how.  And it is also unclear whether Plaintiff's state-law UCL claim relates only to the non-ERISA plans because it does not include this parenthetical.

 Plaintiff's threadbare, vague references and parentheticals to "non-ERISA" plans do not satisfy the basic notice pleading standards of Fed. R. Civ. P. 8.  The Complaint does not indicate which member claims (if any) relate to non-ERISA plans as opposed to ERISA-governed plans.  The mere possibility that at least some member claims are not governed by ERISA, but instead subject to state law, is legally insufficient.  *See, e,g, BioHealth Med. Lab., Inc. v. Conn. Gen. Life. Ins. Co.*, No. 1:15-cv-23075-KMM, 2016 U.S. Dist. LEXIS 11466, at *16 (S.D. Fla. Feb. 1, 2016) (Plaintiff "bear[s] the exclusive burden of establishing the existence of any plan from which their non-ERISA claims arise" and "merely claiming that some of the member claims arise under non-ERISA plans is insufficient to provide fair notice to Cigna").

Moreover, Plaintiff offers no basis that any member claims under non-ERISA plans would be governed by California law, as opposed to the law of other states.  It is equally plausible that *some* member claims relate to non-ERISA plans governed by the laws of states other than California.  There

1   is no way of telling from the face of the Complaint that the laws of California (versus another state)

2   would necessarily apply to the non-ERISA plans that Plaintiff presumes to exist. Because Plaintiff has

3   failed to articulate or allege whether it asserts claims stemming from non-ERISA plans, which medical

4   claims are subject to state law, and how California law presumes to apply, Plaintiff's state law claims

5   should be dismissed in their entirety.

6          But even if the Court declines to dismiss the California claims on these grounds, each of them

7   clearly fails for a variety of individual reasons set forth below.

8                   **2.   Plaintiff's Claim For Promissory Estoppel Fails.**

9          Plaintiff adds a claim under California law for "promissory estoppel" but fails to allege a single

10  "promise" from Aetna on which Plaintiff could have relied to its detriment.  A promissory estoppel

11  claim requires Plaintiff to plead "(1) a promise clear and unambiguous in its terms; (2) reliance by the

12  party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the

13  party asserting the estoppel must be injured by his reliance." *Adv. Choices, Inc. v. State Dep't of*

14  *Health Servs*, 182 Cal. App. 4th 1661, 1672 (2010).  Plaintiff's promissory claim fails at the threshold

15  because Plaintiff has failed to plead a "clear and unambiguous promise." *See Avanguard Surgery Ctr.*

16  *v. Cigna Healthcare of California, Inc.*, No. 2:20-cv-03405, 2020 U.S. Dist. LEXIS 156826, at *5

17  (C.D. Cal. Aug. 28, 2020) ("An actionable promise must not only be 'clear and unambiguous in its

18  terms,' but also cannot be based on preliminary discussions.").  Under California law, a "clear and

19  unambiguous" promise must be sufficiently definite such that it defines the duties and scope of

20  performance. *See Ladas v. Cal. State Auto Ass'n*, 19 Cal. App. 4th 761, 770 (1993). To state a claim

21  for promissory estoppel, therefore, Plaintiff is required to "allege sufficient facts to establish the

22  treatment [Aetna] promised to pay for and the patients [Aetna] promised to pay for." *Aton Ctr., Inc.*

23  *v. Blue Cross & Blue Shield of N.C.*, No. 3:20-cv-00492-WQH-BGS, 2020 U.S. Dist. LEXIS 138600,

24  at *17 (S.D. Cal. Aug. 3, 2020).

25         Plaintiff does not allege a single promise — or even a representation — from Aetna to Plaintiff.

26  This is fatal to Plaintiff's claim.  Instead of pleading a promise, Plaintiff vaguely alleges that "Aetna

27  undertook conduct that conveyed to Plaintiff that coverage for COVID testing would be afforded to

28  its members" and "arbitrarily adjudicated claims and refused to issue proper reimbursements when the

-25-

claims were submitted[.]"  Compl. ¶ 86.  A vague allegation of "conduct that conveyed" something to Plaintiff is not nearly enough to plead a "clear and unambiguous promise to pay." *Aton Ctr*, 2020 U.S. Dist. LEXIS 138600, at *17.  Indeed, California law is clear that promissory estoppel claims may not stand on "prior course of dealing" or even "industry custom" — a plaintiff must allege a specific promise to proceed.  *TML Recovery, LLC v. Humana, Inc.*, No. 18-cv-00462, 2018 U.S. Dist. LEXIS 228980, at *10 (C.D. Cal. Nov. 26, 2018).  Plaintiff has not, and cannot, allege a promise sufficient to sustain a promissory estoppel claim.  *See id.*

Further, Plaintiff insists that this reliance was both reasonable and foreseeable "given [Aetna]'s public statements and publications emphasizing its compliance with the aforementioned laws." Compl. ¶ 88.  First and foremost, general statements by Aetna concerning "compliance with laws" do not equate to a specific promise to pay whatever outrageous, inflated price is demanded by Plaintiff for COVID-19 testing services.  Moreover, Plaintiff fails to identify any specific alleged "public statements and publications" where Aetna made a "clear and unambiguous promise, such that any reliance by Plaintiff should be deemed reasonable or foreseeable." *See Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 418 (finding "[a] party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance" and a "mere 'hopeful expectation[ ] cannot be equated with the necessary justifiable reliance'").  Plaintiff's promissory estoppel claim falls well short of what is required to state a claim under California law.

### 3.  Plaintiff's Claim For Injunctive Relief Must Be Dismissed.

Plaintiff's claim for "Injunctive Relief" must be dismissed because injunctive relief is a remedy and not an independent cause of action under California law.  *Peterson v. Wash. Mut Bank*, No. C-10-01462-JCS, 2010 U.S. Dist. LEXIS 144391, at *32 (N.D. Cal. July 29, 2010) (dismissing claim for injunctive relief because injunctive relief is not a cause of action); *see also Milyakov v. JP Morgan Chase Bank*, No. C-11-02066, 2011 U.S. Dist. LEXIS 99152, at *7 (N.D. Cal. Sept. 2, 2011) (same). As the Court in *Milyakov* noted, "[i]njunctive relief . . . is a remedy which must rely upon underlying claims.  If plaintiffs seek injunctive relief, they should request it as part of their prayer for relief." Accordingly, Plaintiff's claim for "Injunctive Relief" must be dismissed.  Compl. ¶¶ 94-98.

**4. Plaintiff's Claim Under the California Unfair Competition Law Must Be Dismissed.**

Plaintiff's final claim is for a violation of California's Unfair Competition Law ("UCL") — which also fails. California's UCL law "prohibits unfair competition by means of any unlawful, unfair, or fraudulent business practice." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code §§ 17200-17210). Each prong of the UCL is a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Plaintiff alleges all three theories, but fails to allege any conduct sufficient to state a claim under any one of them. *See* Compl. ¶¶ 99-105.

As a threshold matter, Plaintiff's UCL claims fail because the appropriate remedy for Plaintiff's claims — if any — is damages in the form of payment for testing. To sustain a claim under any of the prongs of the UCL, a plaintiff must "set forth facts to show the [alleged] breach cannot be adequately compensated for in damages; failing this, it does not state a cause of action." *See Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17-cv-03871, 2017 U.S. Dist. LEXIS 167462, at *12 (N.D. Cal. Oct. 10, 2017). Nowhere does Plaintiff contend, or allege facts, that its potential legal remedies are inadequate. As such, its claims under the UCL fail. And, as addressed below, Plaintiff has failed to allege facts to sustain a claim for any relief under the UCL.

*a. Plaintiff's claim under the "unlawful" prong fails.*

Plaintiff's claim under the "unlawful" prong of the UCL is inadequately pled. *See* Compl. ¶ 101. To proceed under the "unlawful" prong, a "claim must show a plausible statutory violation." *Prime Healthcare Servs v. United Healthcare Servs.*, No. 2:16-cv-01773, 2017 U.S. Dist. LEXIS 162863, at *10 (E.D. Cal. 2017). And to plead such a violation, a plaintiff must identify the allegedly-violated statutory provisions, and set forth specifically how the defendant violated those statutes. *Id.*; *see also ABC Servs. Grp., Inc. v. United Healthcare Servs.*, No. 19-cv-0531, 2019 U.S. Dist. LEXIS 168445, at *20-21 (C.D. Cal. June 14, 2019). In *ABC Servs.*, the plaintiff — like Plaintiff here — failed to state a UCL violation under the "unlawful" prong because although it "cit[ed] numerous state and federal statutory provisions that Defendants allegedly violated, it largely fail[ed] to identify which of Defendants' alleged acts or omissions violated which particular statutory provisions." *Id.* The

-27-

1    Court found that the allegations related to specific statutory provisions fell short because they were

2    "largely conclusory." *Id.*  So too here.  Plaintiff simply states that Aetna's "business acts and practices

3    violated numerous provisions of law, including the Federal Cares Act, RICO, and the FFRCA."

4    Compl. ¶ 101.  Nowhere does Plaintiff identify the specific provisions of the statutes Aetna allegedly

5    violated, or set forth with sufficient detail how Aetna plausibly violated any statute.  As such, Plaintiff

6    has not plead a claim under the "unlawful" prong.  *Prime Healthcare Servs*, 2017 U.S. Dist. LEXIS

7    162863, at *10.

8                            b.   *Plaintiff's claim under the "unfair" prong fails.*

9          Plaintiff's allegations regarding "unfair" conduct fail because only competitors and consumers

10   can assert a claim for violation of the UCL's "unfair" prong.  *Linear Tech. Corp. v. Applied Materials,*

11   *Inc.*, 152 Cal. App. 4th 114, 135 (2007) (affirming dismissal of UCL "unfair" claims because plaintiffs

12   were "neither competitors nor powerless, unwary consumers").  Here, Plaintiff, a provider receiving

13   reimbursement from Aetna, is neither a competitor nor a consumer.  *IV Sols., Inc. v. Conn. Gen. Life*

14   *Ins. Co.*, No. 13-cv-9026, 2015 U.S. Dist. LEXIS 189753, at *41-52 (C.D. Cal. Jan 29, 2015)

15   (dismissing provider's "unfair" UCL claim against plan administrator because, "at the end of the day,

16   this is a non-competitor business-to-business contract dispute"); *see also In re Out of Network*

17   *Substance Use Disorder Claims*, No. 19-cv-2075, 2020 U.S. Dist. LEXIS 81195, at *26 (C.D. Cal.

18   Feb. 21, 2020) (same).

19         Moreover, Plaintiff has not pled any unfair conduct — again resorting to allegations that are

20   so conclusory as to be meaningless.  *See* Compl. ¶ 102.  Unfair conduct under California law is that

21   which "threatens an incipient violation of antitrust law, or that violates the policy or spirit of one of

22   those laws because its effects are comparable to or the same as a violation of the law, or otherwise

23   significantly threatens are harms competition."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20

24   Cal. 4th 163, 187 (1999).  And a plaintiff must "allege harm to the market as a whole;" an injury to an

25   individual firm is not an injury to competition.  *See Snapkeys, Ltd. v. Google, LLC*, No. 19-CV-02658,

26   2020 U.S. Dist. LEXIS 203172, at *9 (N.D. Cal. Oct. 30, 2020).  Plaintiff here has not alleged harm

27   to competition or any market.  At best, Plaintiff has alleged some generalized harm to it, based on

28

-28-

1    Aetna allegedly not reimbursing it as much as it charged for its COVID-19 tests.  That is not enough

2    to plausibly state a claim for unfair business practices under the UCL.  *Id.*

             *c.   Plaintiff's claim under the "fraud" prong fails.*

4            Plaintiff's claim that Aetna has "engaged in a fraudulent business practice" fails too.  *See*

5    Compl. ¶ 103.  To state a claim under this prong, a plaintiff must plausibly plead that Aetna's business

6    practice "will likely deceive the public."  *Prime Healthcare Servs*, 2017 U.S. Dist. LEXIS 162863, at

7    *10.  And fraud claims under this prong of the UCL are subject to the heightened pleading standard

8    of Rule 9(b).  *In re Wellpoint*, 903 F. Supp. 2d at 925 (requiring plaintiff asserting UCL fraud claim

9    to plead the who, what, when, where, and how of the allegedly fraudulent conduct).  Plaintiff does not

10   allege in its Complaint that Aetna made any communications to the public, or any conduct directed at

11   or communications with Aetna members.  Instead, Plaintiff's Complaint only (vaguely) contains

12   allegations regarding Aetna's conduct towards the Plaintiff.  That is not enough to sustain a claim

13   under the UCL.  *See TomTom Int'l, B.V. v. Broadcom Corp*, No. 14-cv-745, 2015 U.S. Dist. LEXIS

14   47583, at *25-26 (C.D. Cal. Apr. 9, 2015) (noting "members of the public under the fraudulent prong

15   . . . refers to consumers, not other business entities with a relationship with the alleged defrauder");

16   *see also Carlin v. DairyAmerica, Inc.*, 978 F. Supp. 2d 1103, 1117 (E.D. Cal. 2013) (dismissing UCL

17   business-to-business fraud claims).  More fundamentally, and as discussed at Section V.C.1, *supra*,

18   Plaintiff has not identified any allegedly fraudulent conduct on the part of Aetna, directed at it or

19   anyone else.  Plaintiff's UCL claim under the "fraud" prong fails.

20   **F.  PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRICKEN.**

21           Plaintiff's class action allegations should be stricken at the pleading stage because Plaintiff's

22   class theory is fatally flawed and unfixable.  *See Cimoli v. Alacer Corp.*, No. 20-cv-07838, 2022 U.S.

23   Dist. LEXIS 33593, at *36-38 (N.D. Cal. Feb. 25, 2022) (striking nationwide class allegations under

24   Fed. R. Civ. P. 12(f)).  Motions to strike class allegations at the pleading stage are only granted in

25   "'rare circumstances' where 'the complaint demonstrates that a class action cannot be maintained on

26   the facts alleged.'"  *Id.* (quoting *Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No 13-cv-1803,

27   2014 U.S. Dist. LEXIS 35444, at *3 (N.D. Cal. Mar. 14, 2014)).  A "very strict standard" applies to

28   motion to strike class allegations on the pleadings — they can succeed only when "questions of law

are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken." *Id*. This is one of those "rare circumstances" in which, even under the most stringent standard, Plaintiff's class allegations are facially untenable.

Plaintiff seeks to represent a "nationwide class" of "[a]ll persons, businesses and entities who were and are out of network providers of Covid testing services and covered by the CARES and FFRCA ACTs for payment by Aetna of their posted prices for rendered Covid Testing services to the Defendant Aetna's insured." Compl. ¶ 24. Plaintiff's "class" claims relate exclusively to its FFCRA and CARES Act claims. *Id*. ¶ 27. All of the "common questions of fact and law" Plaintiff identifies concern the application of the CARES Act and FFCRA. *Id*. But there is no private right of action under FFCRA and the CARES Act, for the reasons set forth above in Section V.A.1., *supra*, and for the reasons explained by the Court in *Saloojas I*. Because Plaintiff has no private right of action under FFCRA and the CARES Act, "under no set of circumstances" could Plaintiff pursue claims on behalf of a class for violations of these statutes. *Cimoli*, 2022 U.S. Dist. LEXIS 33593, at *36-38.

In *Cimoli*, the plaintiff attempted to assert a "nationwide class" based on alleged violations of a state consumer-protection statute. *Id*. The court found, however, that the plaintiff failed to plead a violation of that statute, and thus struck the class allegations because they were premised on the claim that court dismissed. *Id*. The same applies here. Because Plaintiff's class is premised entirely on its FFCRA and CARES Act claims — which fail — Plaintiff's class action allegations must be stricken as well.[17] *Id*.

---

[17] Plaintiff's class theory suffers from other fatal deficiencies, from which it is clear even at this early stage that a class is uncertifiable. Even plaintiff's purported individual claims — which should be dismissed in their entirety — purport to involve a multitude of different benefit plans the payment methodologies and reimbursement rates for each could vary based on the plan terms and plan type, not to mention, and Plaintiff's own billed charges and the circumstances of its publicly-posted cash price. It is inconceivable that Plaintiff could represent any class of other providers in light of these highly individualized issues under Rule 23.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety for failure to state any claim for relief.

DATED:  July 15, 2022

/s/ Jean E. Richmann
Jean E. Richmann

**ALSTON & BIRD LLP**

*Attorney for Defendant*
*Aetna Health of California, Inc.*

-31-