UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOOJAS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AETNA HEALTH OF CALIFORNIA, INC, <br><br> Defendant. | Case No. 22-cv-02887-JSC <br><br> **ORDER RE: MOTION TO DISMISS** <br><br> Re: Dkt. No. 25 |

Plaintiff, a healthcare provider, brings a putative class action against an insurer for underpaying for COVID tests provided to its insureds.[1] (Dkt. No. 1.)[2] Before the Court is Defendant's motion to dismiss.[3] (Dkt. No. 25.) After carefully considering the briefing, and having vacated the scheduled hearing, *see* N.D. Cal. Civ. L.R. 7-1(b), the Court GRANTS the motion.

**COMPLAINT ALLEGATIONS**

Plaintiff has operated seven specimen collection sites to provide COVID testing. Plaintiff is outside Defendant's provider network. It alleges Defendant has incorrectly adjudicated and denied the majority of Plaintiff's claims for reimbursement for providing COVID testing to members of Defendant's insurance plans and "Employer Plans" administered by Defendant.

---

[1] After briefing on this motion was complete, Plaintiff filed a "corrected copy" of its complaint. (Dkt. No. 31.) Because the new copy was not redlined, the Court does not know how it differed from the original and does not consider it. *See* Civil Standing Order for District Judge Jacqueline Scott Corley (Revised April 11, 2022), https://www.cand.uscourts.gov/wp-content/uploads/judges/corley-jsc/JSC-Civil-Standing-Order-April-2022.pdf, at 3.

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[3] Defendant contends it has been erroneously sued as Aetna Health of California, Inc., and that the correct party is Aetna Life Insurance Company. (Dkt. No. 25 at 2 n.1.)

1    Plaintiff asserts that under Sections 3201 and 3202(a)(2) of the Coronavirus Aid, Relief,
2 and Economic Security ("CARES") Act and Section 6001 of the Families First Coronavirus
3 Response Act ("FFCRA"), Defendant must reimburse "an amount that equals the cash price for
4 such Covid Testing services as listed by the [out-of-network] provider on its public internet
5 website or to negotiate a rate/amount to be paid that is less than the publicized cash price,"
6 "without the imposition of cost-sharing, prior authorization or other medical management
7 requirements." (Dkt. No. 1 ¶¶ 12–13.) Plaintiff's billed services include "the doctor COVID
8 medical visit CPT [Code] 99203," "the additional urgent care walkin charge CPT CODE S9088,"
9 "the patient optional Covid swab collection fee CPT [Code] G2023," and "the patient optional fee
10 for the emergency COVID protective equipment CPT CODE 99072." (*Id.* ¶ 48.) Defendant has
11 denied or underpaid Plaintiff's claims for arbitrary reasons, set up unfair administrative appeals
12 procedures, and fraudulently profited from the COVID public health emergency. It has created a
13 burdensome scheme of requesting medical records from Plaintiff for the purpose of denying as
14 many claims as possible, which amounts to improperly imposing medical management
15 requirements as a condition of reimbursement. Finally, Defendant has assessed co-pays and
16 deductibles against its insureds in violation of Section 3203 of the CARES Act, as indicated on
17 Explanations of Benefits received by Plaintiff.
18    Plaintiff brings claims under Section 3202(a)(2) of the CARES Act and Section 6001 of
19 the FFCRA; Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA");
20 the Racketeer Influenced and Corrupt Organizations Act ("RICO"); promissory estoppel;
21 injunctive relief; and California's Unfair Competition Law ("UCL"). (*Id.* ¶¶ 54–105.) Plaintiff
22 represents a putative nationwide class of "[a]ll persons, businesses and entities who were and are
23 out of network providers of Covid testing services and covered by the CARES and FFRCA ACTs
24 for payment by Aetna of their posted prices for rendered Covid Testing services to the Defendant
25 Aetna's insured." (*Id.* ¶ 24.)
26    This case is related to five earlier-filed cases in which Plaintiff sought reimbursement from
27 Defendant for COVID testing five individual patients pursuant to the CARES Act. The Court
28 dismissed the five related cases because the CARES Act does not provide an express or implied

2

1  private right of action for Plaintiff to seek reimbursement of its posted cash price.  *Saloojas, Inc. v.*
2  *Aetna Health of Cal., Inc.*, Nos. 22-cv-01696-JSC, 22-cv-01702-JSC, 22-cv-01703-JSC, 22-cv-
3  01704-JSC, 22-cv-01706-JSC, 2022 WL 2267786 (N.D. Cal. June 23, 2022), *appeals docketed*,
4  Nos. 22-16035, 22-16036, 22-16037, 22-16038, 22-16034 (9th Cir. July 18, 2022).[4]  The Court
5  granted leave to amend based on Plaintiff's argument that it could amend to state a claim under
6  ERISA.  However, Plaintiff did not file an amended complaint in any of the five cases, and instead
7  appealed them.

**DISCUSSION**

Defendant moves to dismiss all claims for failure to state a claim.[5]

## I. CARES Act & FFCRA

Plaintiff's first claim fails as a matter of law.  There is no private right of action to enforce Section 3202(a)(2) of the CARES Act or Section 6001 of the FFCRA by requiring Defendant to pay Plaintiff's posted cash price.  The Court incorporates the analysis from its order granting motions to dismiss in the five related cases.  *Saloojas*, 2022 WL 2267786, at *2–5; *accord GS Labs, Inc. v. Medica Ins. Co.*, No. 21-cv-2400 (SRN/TNL), 2022 WL 4357542, at *2–11 (D. Minn. Sept. 20, 2022).  Defendant's motion to dismiss is granted as to this claim.  Because the defect lies in the legal theory, the dismissal is without leave to amend.  *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017).

## II. ERISA

Plaintiff's second claim cites ERISA Section 502(a)(1)(B).  Defendant moves to dismiss for lack of statutory standing, for failure to exhaust, and for failure to state a claim for benefits or equitable reformation.

---

[4] (Case No. 22-cv-01696-JSC, Dkt. No. 24; Case No. 22-cv-01702-JSC, Dkt. No. 23; Case No. 22-cv-01703-JSC, Dkt. No. 20; Case No. 22-cv-01704-JSC, Dkt. No. 21; Case No. 22-cv-01706-JSC, Dkt. No. 23.)

[5] The Court construes Plaintiff's second-filed opposition as a notice of errata and considers that version rather than the first-filed.  (Dkt. No. 32; *see* Dkt. Nos. 26, 28.)  If Defendant has any objection that is not mooted by this Order, Defendant should file the objection within 7 days of this Order.

### A. Standing

> ERISA provides for a federal cause of action for civil claims aimed at enforcing the provisions of an ERISA plan. To have standing to state a claim under ERISA, a plaintiff must fall within one of ERISA's nine specific civil enforcement provisions, each of which details who may bring suit and what remedies are available.

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1288 (9th Cir. 2014) (cleaned up). ERISA Section 502(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

As a matter of statutory standing, healthcare providers are neither "participants" nor "beneficiaries" and do not have direct authority to sue "to recover payments due them for services rendered, or otherwise to enforce [ERISA's] protections." *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 875 (9th Cir. 2017) ("Health care providers' patients are thus the ones who receive ERISA health benefits, not the providers themselves."). Thus, Plaintiff is not a participant or beneficiary entitled to sue under ERISA Section 502(a)(1)(B). *See Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, No. 3:20cv1675(JBA), 2022 WL 743088, at *2–6 (D. Conn. Mar. 11, 2022) (applying this rule to provider seeking reimbursement for COVID testing).

A provider may nonetheless have statutory standing if a beneficiary has assigned her right to reimbursement to the provider. *See Spinedex*, 770 F.3d at 1289 ("As a non-participant health care provider, Spinedex cannot bring claims for benefits on its own behalf. It must do so derivatively, relying on its patients' assignments of their benefits claims."). "To determine the scope of the assignment, a court must look to the language of an ERISA assignment itself." *Creative Care, Inc. v. Conn. Gen. Life Ins. Co.*, No. CV 16-9056-DMG (AGRx), 2017 WL 5635015, at *2 (C.D. Cal. July 5, 2017) (cleaned up). Thus, to allege statutory standing, a provider must "at bare minimum . . . allege the specific language of the assignment itself." *County of Monterey v. Blue Cross of Cal.*, No. 17-CV-04260-LHK, 2019 WL 343419, at *6 (N.D. Cal. Jan. 28, 2019).

Here, Plaintiff alleges only, "Many of the members of plans either insured or administered by [Defendant] who received Covid Testing services from Plaintiff executed assignment of benefits documents." (Dkt. No. 1 ¶ 68.) It does not allege the existence of any specific ERISA-governed plan or the language of any specific assignment. *Cf. Murphy Med.*, 2022 WL 743088, at *6–7 (D. Conn. Mar. 11, 2022) (concluding complaint adequately alleged patients assigned plaintiff standing to seek benefits but not equitable reformation). Therefore, the complaint fails to allege that Plaintiff has statutory standing by virtue of assignment. *See County of Monterey*, 2019 WL 343419, at *6 (dismissing claim for same defect).

Plaintiff also asserts that the CARES Act and FFCRA "have given [out-of-network] providers of Covid Testing services standing to sue self-funded health plans subject to ERISA," "obviat[ing] the need for a provider to obtain a specific assignment of ERISA benefits from a member of a health plan subject to ERISA to be entitled to seek reimbursement from the health plan for Covid Testing services." (Dkt. No. 1 ¶¶ 69–70.) That is not correct as a matter of law. Plaintiff points to no specific text in either statute purporting to amend ERISA's requirements for statutory standing. *See Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1303 (2017) (noting that statutory standing "is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim" (cleaned up)).

Moreover, the CARES Act and FFCRA's references to ERISA, *see Saloojas*, 2022 WL 2267786, at *2–4, support the opposite conclusion from Plaintiff's argument. They suggest that the CARES Act and FFCRA incorporate and harmonize with ERISA's enforcement scheme. CARES Act Section 3202(a) requires "[a] group health plan or a health insurance issuer providing coverage of items and services described in [FFCRA] section 6001(a) . . . with respect to an enrollee" to "reimburse the provider of the diagnostic testing" according to the CARES Act. Pub. L. 116–136, § 3202 (Mar. 27, 2020), 134 Stat. 367. FFCRA Section 6001, in turn, provides that "[a] group health plan and a health insurance issuer offering group or individual health insurance coverage . . . shall provide coverage, and shall not impose any cost sharing (including deductibles, copayments, and coinsurance) requirements or prior authorization or other medical management

5

1    requirements," for certain services. Pub. L. 116–127, § 6001(a) (Mar. 18, 2020), 134 Stat. 178.
2    Further, it provides that "'group health plan'; 'health insurance issuer'; 'group health insurance
3    coverage', and 'individual health insurance coverage' have the meanings given such terms" in
4    ERISA Section 733, among other statutes. *Id.* § 6001(d).  Thus, there is no legal support for
5    Plaintiff's contention that the CARES Act and FFCRA have obviated the need for a provider to
6    obtain assignment in order to seek reimbursement under ERISA.

\* \* \*

Defendant's motion to dismiss is granted as to this claim. With respect to the argument that Plaintiff need not allege assignment, the defect lies in the legal theory and the dismissal is without leave to amend. *See Yagman*, 852 F.3d at 863. With respect to Plaintiff's failure to allege a valid assignment, it is not absolutely clear that the defect could not be cured with additional facts, so the dismissal is with leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The Court need not address Defendant's alternative bases to dismiss Plaintiff's ERISA claim.

## III.   RICO

Plaintiff's third claim arises under the RICO Act, 18 U.S.C. § 1962(c). Defendant moves to dismiss for failure to comply with Federal Rule of Civil Procedure 9's heightened pleading requirements.

The RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "The terms of the Civil RICO statute permit [a]ny person injured in his business or property by reason of a violation of § 1962 to recover treble damages." *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1132 (9th Cir. 2020). To state a civil RICO claim, a plaintiff must allege facts showing each defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (cleaned up). "Racketeering

activity is any act indictable under several provisions of Title 18 of the United States Code," identified at 18 U.S.C. § 1961(1). *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (cleaned up). "To plead a RICO pattern, at least two predicate acts of racketeering activity need to be alleged." *Synopsis, Inc v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1077 (N.D. Cal. 2018).

RICO claims based on predicate acts of fraud or "grounded in" fraud must comply with the heightened pleading requirements of Rule 9(b). *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) ("Rule 9(b)'s requirement that 'in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims." (cleaned up)); *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) ("In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).").

Plaintiff alleges:

> The pattern of racketeering activity under 18 U.S.C. § 1961(1) and (5) . . . includes [Defendant's] multiple, repeated, and continuous use of the mails and wires in furtherance of the Improper Record Request Scheme, meritless claims and appeals processes, its disinformation campaign in violation of 18 U.S.C. §§ 1341 and 1343, and embezzlement and/or conversion of self[-]funded plans assets through its CRS Benchmark Program[6] in violation 18 U.S.C. § 664.

(Dkt. No. 1 ¶ 83.) 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 664 (embezzlement from employee benefit plan) are predicate acts contemplated by 18 U.S.C. § 1961(1). However, Plaintiff's allegations are fatally conclusory. Plaintiff does not allege facts supporting a reasonable inference that Defendant engaged in mail fraud, wire fraud, or embezzlement, or facts sufficient to give Defendant fair notice of the basis for its RICO claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 12(b)(6) requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Nor does Plaintiff "detail with particularity the time, place, and manner of

---

[6] The complaint does not explain this acronym.

7

each act of fraud," "the role of each defendant in each scheme," and "why the statement or omission complained of was false and misleading." *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (unpublished) (cleaned up). Thus, the RICO claim fails to comply with Rule 9(b).

Accordingly, Defendant's motion to dismiss is granted as to this claim. It is not absolutely clear that the defect could not be cured with additional facts, so the dismissal is with leave to amend. *See Lopez*, 203 F.3d at 1127.

### IV. Promissory Estoppel

Under California law, the elements of promissory estoppel are: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Advanced Choices, Inc. v. State Dep't of Health Servs.*, 107 Cal. Rptr. 3d 470, 479 (Cal. Ct. App. 2010).

Plaintiff alleges Defendant "undertook conduct that conveyed to Plaintiff that coverage for COVID testing would be afforded to its members, but then arbitrarily adjudicated claims and refused to issue proper reimbursements when the claims were submitted." (Dkt. No. 1 ¶ 87.) That falls short of alleging "a promise clear and unambiguous in its terms." *Advanced Choices*, 107 Cal. Rptr. 3d at 479. The complaint does not allege facts supporting a reasonable inference that Defendant made a clear and unambiguous promise to pay Plaintiff a certain amount for COVID testing its insureds. *See Iqbal*, 556 U.S. at 678. Rather, the gist of the complaint is that Defendant was legally required to pay the posted cash price, not that it ever promised Plaintiff to do so. Because the first element is lacking, Plaintiff fails to state a claim for promissory estoppel. *Cf. Aton Ctr., Inc. v. Blue Cross & Blue Shield of N.C.*, No. 3:20-cv-00492-WQH-BGS, 2020 WL 4464480, at *5 (S.D. Cal. Aug. 3, 2020) ("Plaintiff's failure to allege sufficient facts to establish the treatment Defendant promised to pay for and the patients Defendant promised to pay for precludes Plaintiff's promissory estoppel claim."); *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17-CV-03871-LHK, 2017 WL 4517111, at *6 (N.D. Cal. Oct. 10, 2017) ("[Plaintiff alleges] that when Plaintiff contacted Defendants, Defendants told Plaintiff that certain insurance

1  policies issued by Defendants provided for reimbursement of substance abuse treatment services at
2  the UCR.  Under California law, these representations by Defendants—which are merely
3  representations about the terms of certain insurance policies—do not amount to a clear and
4  unambiguous promise by Defendants to pay for substance abuse treatment services at the UCR.").

Accordingly, Defendant's motion to dismiss is granted as to this claim.  It is not absolutely clear that the defect could not be cured with additional facts, so the dismissal is with leave to amend.  *See Lopez*, 203 F.3d at 1127.  The Court need not address Defendant's alternative bases to dismiss Plaintiff's promissory estoppel claim.

## V.     Injunctive Relief

Plaintiff styles its fifth claim "injunctive relief (non-ERISA)."  (Dkt. No. 1 ¶¶ 94–98.)  An injunction is a form of relief, not a substantive claim creating liability.  *See Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010).  It may properly appear in a complaint's prayer for relief, not as a claim or cause of action.  Accordingly, Defendant's motion to dismiss this claim is granted, without leave to amend.  *See, e.g.*, *Milyakov v. JP Morgan Chase Bank*, No. C-11-02066, 2011 WL 3879503, at *3 (N.D. Cal. Sept. 2, 2011).  To the extent injunctive relief appears in the complaint's prayer for relief, (Dkt. No. 1 at 35–37), it is not dismissed or stricken on this basis.

## VI.    UCL

California's UCL prohibits "unlawful, unfair or fraudulent" business practices.  Cal. Bus. & Prof. Code § 17200.  The statute "is written in the disjunctive," establishing three varieties or prongs of unfair competition.  *Cel-Tech Comms., Inc. v. L.A. Cellular Telephone Co.*, 973 P.2d 540 (Cal. 1999) (cleaned up).  Plaintiff's claim invokes all three.  (Dkt. No. 1 ¶¶ 99–105.)

Under the UCL, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution"; they "may not receive damages."  *Cel-Tech*, 973 P.2d at 539.  A plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).  Thus, at the pleading stage, a plaintiff seeking injunctive or other equitable relief under the UCL in federal court must adequately allege that she lacks an adequate legal remedy.

9

1    Plaintiff fails to allege that damages would inadequately redress the harms caused by
2 Defendant. The crux of the complaint is that Defendant has not reimbursed Plaintiff for its posted
3 cash price of COVID testing. There are no factual allegations supporting a reasonable inference
4 that injunctive relief is needed in addition to reimbursement. *See Iqbal*, 556 U.S. at 678; *Summit
5 Estate*, 2017 WL 4517111, at *12 ("[S]ix of Plaintiff's other causes of action—for breach of
6 express contract, breach of implied contract, intentional misrepresentation, negligent
7 misrepresentation, fraudulent concealment, and negligent failure to disclose—allow Plaintiff to
8 recover monetary damages. . . . [B]ecause Plaintiff's UCL cause of action relies upon the same
9 factual predicates as Plaintiff's legal causes of action—that Defendants said they would reimburse
10 Plaintiff for substance abuse treatment services at the UCR, but later paid a lower rate—it must be
11 dismissed." (cleaned up)). Indeed, Plaintiff's UCL claim reiterates that the main harm is failure to
12 reimburse. (*See* Dkt. No. 1 ¶ 104 ("The Defendant Aetna have failed to publicly acknowledge the
13 wrongfulness of their actions and provide the complete relief required by the statute and pay
14 Plaintiff for the rendered Covid Testing Services as required by law.").) To the extent Plaintiff
15 asserts injunctive relief is necessary to stop Defendant's campaign to mislead the public, the
16 complaint does not allege facts supporting a reasonable inference of such a campaign or facts
17 sufficient to give Defendant fair notice of the basis for the claim. *See Iqbal*, 556 U.S. at 678.
18    Accordingly, Defendant's motion to dismiss is granted as to this claim. It is not absolutely
19 clear that the defect could not be cured with additional facts, so the dismissal is with leave to
20 amend. *See Lopez*, 203 F.3d at 1127. The Court need not address Defendant's alternative bases to
21 dismiss Plaintiff's UCL claim.

**CONCLUSION**

23    Defendant's motion to dismiss is GRANTED. Plaintiff's claim under the CARES Act and
24 FFCRA and claim for injunctive relief are dismissed without leave to amend. Plaintiff's ERISA
25 claim is dismissed without leave to amend regarding the argument that Plaintiff need not allege
26 assignment as a matter of law. The ERISA claim is dismissed with leave to amend to add factual
27 allegations, if there is a good faith basis for doing so, regarding assignment. Plaintiff's RICO
28 claim, promissory estoppel claim, and UCL claim are dismissed with leave to amend.

10

Plaintiff may file an amended complaint on or before **October 31, 2022**.

This Order disposes of Docket No. 25.

**IT IS SO ORDERED.**

Dated: September 30, 2022

_____
JACQUELINE SCOTT CORLEY
United States District Judge