UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOOJAS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>AETNA HEALTH OF CALIFORNIA, INC,<br><br>    Defendant. | Case No. 22-cv-02887-JSC<br><br>**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 40 |

Plaintiff, a healthcare provider, brings a putative class action against an insurer for underpaying for COVID tests provided to its insureds. The Court granted Defendant's motion to dismiss and granted Plaintiff leave to amend some of its claims. (Dkt. No. 36.)[1] Before the Court is Defendant's motion to dismiss the first amended complaint ("FAC").[2] (Dkt. No. 40; *see* Dkt. Nos. 37, 48.) The Court held a hearing on February 9, 2023, at which Plaintiff failed to appear. Having carefully considered the briefing, the Court GRANTS the motion. The FAC does not cure the deficiencies of the original complaint, its new claims fail, and its opposition does not address much of Defendant's argument.

**COMPLAINT ALLEGATIONS**

Plaintiff is a medical facility that provides COVID testing. It is outside Defendant's provider network. It alleges Defendant has incorrectly adjudicated and denied the majority of Plaintiff's claims for reimbursement for providing COVID testing to members of Defendant's

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Defendant contends it has been sued erroneously as Aetna Health of California, Inc. and that the correct party is Aetna Life Insurance Company. (Dkt. No. 40 at 2 n.1.)

insurance plans and "Employer Plans" administered by Defendant.

Plaintiff asserts that under California's SB 510, Defendant must reimburse a "reasonable" amount, "without the imposition of cost-sharing and other medical management requirements," to out-of-network providers of COVID testing. (Dkt. No. 37 at 4–5.) Plaintiff's billed services include "the doctor COVID medical visit CPT [Code] 99203," "the additional urgent care walkin charge CPT CODE S9088," "the patient optional Covid swab collection fee CPT [Code] G2023," and "the patient optional fee for the emergency COVID protective equipment CPT CODE 99072." (*Id.* at 13.)

> Given the uniformity of the Covid Testing services and the electronic claims being submitted to Aetna coupled with the Federal and State mandates that require Aetna to process Covid Testing claims submitted by [out-of-network] providers in a very singular fashion, Plaintiff's very reasonable expectation was that all Covid Testing claims should be paid at Plaintiff's cash price since Aetna, to date, has not even attempted to negotiate an amount to be paid despite Plaintiff's good faith attempts to do so.

(*Id.* at 12.) Defendant has denied or underpaid Plaintiff's claims for arbitrary reasons, set up unfair administrative appeals procedures, and fraudulently profited from the COVID public health emergency. It has created a burdensome scheme of requesting medical records from Plaintiff for the purpose of denying as many claims as possible. Finally, Defendant has assessed co-pays and deductibles against its insureds in violation of SB 510, as indicated on Explanations of Benefits received by Plaintiff. (*Id.* at 13–17.)

The FAC brings claims for violations of the Employee Retirement Income Security Act ("ERISA"); insurance bad faith and fraud; California's Unfair Competition Law ("UCL"); and the Racketeer Influenced and Corrupt Organizations ("RICO") Act. (*Id.* at 22–36.) The FAC cites extensively to California's SB 510, (*e.g.*, *id.* at 7, 8, 9–11, 17, 29), and asserts Defendant has violated it, (*id.* at 5, 13), but does not bring any claims under that law. Plaintiff represents a putative nationwide class of:

> all persons, businesses and entities who were and are out of network providers of Covid testing services and covered by California's SB 510, as well as [the Coronavirus Aid, Relief, and Economic Security Act] and [Families First Coronavirus Response Act] for payment by Aetna of their posted prices for rendered Covid Testing services to the Defendant Aetna's insured.

(*Id.* at 7.)

## DISCUSSION

**I.      ERISA**

In dismissing Plaintiff's ERISA Section 502(a)(1)(B) claim with leave to amend, the Court explained that Plaintiff failed to allege statutory standing. (Dkt. No. 36 at 3–6.) Healthcare providers do not have standing as plan participants or beneficiaries, *see DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 875 (9th Cir. 2017), and the complaint did not plausibly allege Defendant's insureds had assigned their rights to Plaintiff, *see Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1289 (9th Cir. 2014). The specific words "assign" or "assignment" are not "necessary to effectuate an assignment of rights," but the language must "fairly indicate an intention to make the assignee owner of a claim." *DB Healthcare*, 852 F.3d at 876 (cleaned up). Courts have found a limited assignment of rights to payment under ERISA from language such as "I Hereby Authorize My Insurance Benefits to Be Paid Directly to the Physician" and "I request that payment of authorized insurance benefits be made on my behalf to my provider." *Id.* (cleaned up).

The FAC does not plausibly allege assignment. It alleges "[e]ach insured of Aetna has executed the attached Covid medical form which acts as an assignment giving the Plaintiff the right to submit the claims to Aetna for payment on their behalf." (Dkt. No. 37 at 17 ¶ 48.) Neither the language Plaintiff highlights, (*id.* at 22 ¶ 58), nor any other language in the attached form, resembles an assignment:

> . . . Doctor Consulting Visit Charges are Billed to insurance with copays / coinsurance or charged to[ ]me as cash / credit and is a proper charge for Medical Consult service . . . .
>
> Exception: if it is determined by the doctor that the Corona test is MEDICALLY NECESSARY then the NO OUT OF POCKET COST rules will apply, which means that per CMS guidelines insurance copays and out of pocket costs will be refunded for patients with insurance and cash pay charges refunded for persons paying cash / credit card. For Medically necessary Corona testing, Office will bill insurance or CMS for visit and testing by CLIA certified lab.

(*Id.* at 18.) At most, this language tells patients Plaintiff will bill their insurance companies. It does not show that patients intended to transfer any right to payment to Plaintiff. *See Brand*

3

*Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan*, 706 F. App'x 442, 443 (9th Cir. 2017) (unpublished) ("The direct payment clauses appear to give Plan beneficiaries the right to insist that the Plan make payments directly to providers. However, nothing about the direct payment clauses suggests that providers, rather than beneficiaries, are entitled to sue the Plan over the breach of its obligation to make direct payments. The clauses therefore do not grant any rights to the providers, nor do they authorize the assignment of any rights to the providers."), *affirming* No. CV-14-3191 FMO (AGRx), 2016 WL 3480782, at *3 (C.D. Cal. Mar. 8, 2016) (direct payment clause: "[w]here benefits are paid directly to a doctor, hospital, or other provider of care . . . , such direct payments are provided at the discretion of the Trustees as a convenience to Plan participants and do not imply an enforceable assignment of Welfare Plan benefits or the right to receive such benefits").

Accordingly, the FAC does not plausibly allege Plaintiff has statutory standing to bring an ERISA Section 502(a)(1)(B) claim. (*See Saloojas Inc. v Blue Shield of Cal. Life & Health Ins. Co.*, Case No. 22-cv-03267-MMC, Dkt. No. 27 at 3 (concluding identical language, *see* Dkt. No. 22-7, "does not suffice to constitute an assignment").) Defendant's motion to dismiss is granted as to this claim. Having amended once, Plaintiff has not identified additional facts it could plead in good faith to cure the defect in statutory standing. *See Ahmed v. County of Santa Clara*, No. 20-CV-05498-LHK, 2021 WL 2139098, at *10 (N.D. Cal. May 26, 2021) ("Plaintiffs' failure to cure these deficiencies demonstrates that further leave to amend would be futile."). Indeed, Plaintiff's only response is that it started using a new assignment of benefits form in November or December 2022. (Dkt. No. 41 at 9; Dkt. No. 41-1.) Because dismissal on standing grounds is not on the merits, the dismissal will be without prejudice. However, as it is clear the defect could not be cured at this time with additional allegations, the dismissal is also without leave to amend. *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The Court need not address Defendant's alternative bases to dismiss Plaintiff's ERISA claim.

## II.     INSURANCE BAD FAITH & FRAUD

Plaintiff's claim for "insurance bad faith and fraud" appears for the first time in the FAC.

(Dkt. No. 37 at 27.) Those are distinct causes of action under California law.

Insurance bad faith is a claim for breach of the implied covenant of good faith and fair dealing. *See Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 103 Cal. Rptr. 3d 906, 928 (Cal. Ct. App. 2010). The covenant is implied from the insurance contract and exists between the contracting parties. *See Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032, 1038 (Cal. 1973). "Someone who is not a party to the contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party." *Hatchwell v. Blue Shield of Cal.*, 244 Cal. Rptr. 249, 253 (Cal. Ct. App. 1988). "A non-party who is nevertheless entitled to policy benefits, such as an 'insured' person under the terms of the policy or an express beneficiary, has standing only if she is the *claimant* whose benefits are wrongfully withheld." *Id.*

The FAC does not plausibly allege Plaintiff is party to a contract with Defendant or is an intended beneficiary of the contracts between Defendant and its insureds. Plaintiff argues that even if the attached form does not create an assignment for purposes of an ERISA Section 502(a)(1)(B) claim, it authorizes payments directly to Plaintiff as the insureds' agent and confers standing. As explained above, the form does not show that patients intended to make Plaintiff their agent or transfer any rights to Plaintiff. The FAC implicitly acknowledges this by alleging Defendant "committed insurance fraud against each *insured*," "to the detriments of its *insured*," and should reimburse "each of its *insured*." (Dkt. No. 37 at 30–31 (emphases added).) Accordingly, the FAC does not establish Plaintiff has standing under California law to claim insurance bad faith. *See Ryan v. Travelers Indem. Co.*, No. 2:13-CV-00607-JAM, 2013 WL 3289075, at *5 (E.D. Cal. June 28, 2013) ("[Although] Plaintiff would clearly gain under the Policy, she is not an intended beneficiary with the right to make direct claims on the Policy; her potential benefits are merely incidental. . . . [C]ourts have recognized that incidental beneficiaries do not have standing to sue under an insurance contract." (cleaned up)).

To state a claim for fraud, a plaintiff must allege "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns v. Ford*

5

1  *Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (cleaned up; emphasis omitted).  The claim must
2  meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See id.* at
3  1125–26.
4        The FAC does not plausibly allege each element.  It alleges Defendant had a legal
5  obligation to pay a reasonable amount for COVID testing and Plaintiff expected Defendant to pay
6  its posted cash price.  The FAC does not plausibly allege Defendant made a misrepresentation to
7  Plaintiff, much less that Defendant had scienter and induced Plaintiff's reliance.  *See Ashcroft v.*
8  *Iqbal*, 556 U.S. 662, 678 (2009); *Kearns*, 567 F.3d at 1126.  Accordingly, the FAC does not state a
9  claim for fraud.  (*Cf.* Dkt. No. 36 at 8–9 (concluding Plaintiff's promissory estoppel claim was not
10 supported by plausible allegations).)

\* \* \*

12       Accordingly, Defendant's motion to dismiss is granted as to Plaintiff's claim for insurance
13 bad faith and fraud.  Although this claim first appeared in the FAC, its underlying theory overlaps
14 with the original complaint's insufficiently pleaded claim for promissory estoppel.  Additionally,
15 Plaintiff has not identified other facts it could plead in good faith to cure the defects.  Because it is
16 clear the defect could not be cured with additional facts, the dismissal is without leave to amend.
17 *See Yagman*, 852 F.3d at 863; *Lopez*, 203 F.3d at 1127.

### III.   RICO

19       In dismissing Plaintiff's RICO claim with leave to amend, the Court explained that
20 Plaintiff failed to plausibly and with particularity allege Defendant committed any predicate acts.
21 (Dkt. No. 36 at 6–8.)  The complaint asserted RICO predicate acts of mail fraud, wire fraud, and
22 embezzlement, *see Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th
23 Cir. 2005), which are grounded in fraud and therefore must comply with the heightened pleading
24 requirements of Rule 9(b), *see Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004).
25       The FAC does not allege additional facts supporting a reasonable inference that Defendant
26 engaged in mail fraud, wire fraud, or embezzlement, or detailing the specific circumstances of
27 fraud.  *See Iqbal*, 556 U.S. at 678 (Rule 12(b)(6)); *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x
28 621, 624 (9th Cir. 2008) (unpublished) (Rule 9(b)).  Moreover, the FAC removes citations to those

1   predicate acts and replaces them with alleged legal violations that are *not* recognized RICO
2   predicates. (*See* Dkt. No. 48 at 47–49.) Violations of California's SB 510 and UCL, violations of
3   the federal CARES Act, and "insurance and bad faith activities," (*id.* at 48), are not racketeering
4   activities contemplated by the RICO Act. *See Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir.
5   2004) (explaining that "[r]acketeering activity is any act indictable under several provisions of
6   Title 18 of the United States Code," identified at 18 U.S.C. § 1961(1) (cleaned up)).

Because the FAC contains no additional factual allegations, the RICO claim again fails to comply with Rule 9(b). Accordingly, Defendant's motion to dismiss is granted as to this claim. Having amended once, Plaintiff has not identified additional facts it could plead in good faith to cure the defects. Because it is clear the defect could not be cured with additional facts, the dismissal is without leave to amend. *See Yagman*, 852 F.3d at 863; *Lopez*, 203 F.3d at 1127.

## IV.   UCL

California's UCL prohibits "unlawful, unfair or fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. The Court previously dismissed the UCL claim because Plaintiff had not shown legal remedies were inadequate. (Dkt. No. 36 at 9–10.) As discussed above, however, Plaintiff does not have a legal remedy. Accordingly, the Court addresses Defendant's argument that Plaintiff fails to state a UCL claim.

The UCL statute "is written in the disjunctive," establishing three varieties or prongs of unfair competition. *Cel-Tech Comms., Inc. v. L.A. Cellular Telephone Co.*, 973 P.2d 540 (Cal. 1999) (cleaned up). Plaintiff's amended claim invokes all three. (Dkt. No. 37 at 32–35 ¶¶ 86–95.)

The unlawful prong claim asserts Defendant has violated both the federal Coronavirus Aid, Relief, and Economic Security ("CARES") Act and California's SB 510 by failing to pay either the posted cash price or the reasonable price for COVID testing. *See* Pub. L. 116–136, § 3202(a); Cal. Health & Safety Code § 1342.2(a)(4); *see generally Cel-Tech*, 973 P.2d at 539–40 ("By proscribing 'any unlawful' business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." (cleaned up)). However, the FAC's allegations that Defendant violated both statutes are too conclusory. The FAC does not allege Plaintiff's posted cash price, the reasonable price in comparison to prevailing

1  market rates, or the amount Defendant paid for each service Plaintiff billed. As such, the FAC
2  does not contain sufficient factual allegations to plausibly allege Defendant violated either statute.
3  *See Iqbal*, 556 U.S. at 678 (explaining that Rule 12(b)(6) requires the plaintiff to plead "factual
4  content that allows the court to draw the reasonable inference that the defendant is liable for the
5  misconduct alleged"). The Court need not address Defendant's preemption argument as to this
6  claim.

7  The unfair prong claim asserts Defendant has set up an intentional scheme to avoid its
8  obligations under SB 510 and has improperly billed its insureds for COVID testing. "An unfair
9  business practice is one that either offends an established public policy or is immoral, unethical,
10 oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*,
11 543 F.3d 498, 506 (9th Cir. 2008) (cleaned up). But only a consumer or a competitor can state a
12 claim under the unfair prong. *See Out of Network Substance Use Disorder Claims*, No. SACV-
13 19-2075-JVS-DFMX, 2020 WL 2114934, at *9 (C.D. Cal. Feb. 21, 2020) (citing *Linear Tech.
14 Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221 (Cal. Ct. App. 2007)). As Plaintiff is neither
15 a consumer nor a competitor of Defendant, the FAC fails to state a claim under the unfair prong.

16 Finally, the fraudulent prong claim asserts Defendant's practices are likely to mislead its
17 insureds and the general public. *See McKell v. Washington Mut., Inc.*, 49 Cal. Rptr. 3d 227, 239
18 (Cal. Ct. App. 2006). Because such a claim is grounded in fraud, it must comply with the
19 heightened pleading requirements of Rule 9(b). *See Kearns*, 567 F.3d at 1124–26. The FAC
20 alleges in conclusory fashion that Defendant has undertaken a campaign to deceive the public, but
21 does not allege "the who, what, when, where, and how of the misconduct charged." *Id.* at 1124
22 (cleaned up). It does not allege facts supporting a reasonable inference of such a campaign or
23 facts sufficient to give Defendant fair notice of the basis for the claim. *See Iqbal*, 556 U.S. at 678.
24 Accordingly, the FAC fails to state a claim under the fraudulent prong.

25 As to the unlawful prong, it is not absolutely clear the defect could not be cured with
26 additional facts, so the dismissal is with leave to amend. As to the unfair prong, Plaintiff cannot
27 allege in good faith that it is a consumer or competitor of Defendant, so the defect lies in the legal
28 theory and the dismissal is without leave to amend. Finally, as to the fraudulent prong, Plaintiff

has already had the opportunity to amend its fraud theory and has not identified additional facts it could plead in good faith to cure the defects; as such, the dismissal is without leave to amend. *See Yagman*, 852 F.3d at 863; *Lopez*, 203 F.3d at 1127.

## CONCLUSION

Defendant's motion is GRANTED. The FAC is dismissed without leave to amend, except that Plaintiff's unlawful prong UCL claim is dismissed with leave to amend. The Court does not grant leave to amend to assert new or additional claims.

As noted above, the FAC cites to but does not assert a claim under California's SB 510. Defendant's reply persuasively argues SB 510 has no private right of action. *See* Cal. Health & Safety Code § 1387(a). If Plaintiff seeks leave to amend to assert a claim under SB 510, it shall file a brief not to exceed 7 pages on or before **February 21, 2023**, explaining why amendment would not be futile. After that date, the Court will set a deadline for Plaintiff to file a Second Amended Complaint with the unlawful prong UCL claim and, if it would not be futile, a SB 510 claim.

This Order disposes of Docket Nos. 40, 49.

**IT IS SO ORDERED.**

Dated: February 13, 2023

JACQUELINE SCOTT CORLEY
United States District Judge